1   Mike Arias, Esq. (SBN 115385)
    Mark A. Ozzello (SBN 116595)
2   **ARIAS OZZELLO & GIGNAC LLP**
    6701 Center Drive West, Suite 1400
3   Los Angeles, California 90045
    Telephone: (310) 670-1600
4   Facsimile:  (310) 670-1231
    marias@aogllp.com
5   mozzello@aogllp.com

6   [Additional Plaintiff's Counsel Listed on
    Signature Page]

7   Attorneys for Plaintiff

8   BRYAN A. MERRYMAN (SBN 134357)
    bmerryman@whitecase.com
9   RACHEL J. FELDMAN (SBN 246394)
    rfeldman@whitecase.com
10  WHITE & CASE LLP
    633 W. Fifth Street, Suite 1900
11  Los Angeles, CA  90071-2007
    Telephone:  (213) 620-7700
12  Facsimile:   (213) 452-2329

13  Attorney for Defendant
    Time Warner Cable LLC

14

# UNITED STATES DISTRICT COURT

15

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

16

17

| | |
|---|---|
| MIGUEL CALZADA, et al., | Case No.: CV 11-01701-DMG (JCGx) |
| Plaintiffs, | |
| vs. | Honorable Dolly M. Gee Courtroom: 7 |
| TIME WARNER CABLE LLC et al., | **JOINT SCHEDULING CONFERENCE REPORT** |
| Defendants. | Date:   August 8, 2011 Time:   11:00 a.m. Room:  7 |

18

19

20

21

22

23

24

25

26     Pursuant to the Court's order of June 17, 2011, Federal Rule of Civil

27 Procedure 26(f), and Central District of California Local Rule 26-1, Plaintiff

28

ARIAS OZZELLO & GIGNAC LLP

### A.    Brief Factual and Legal Statement of the Case

On January 27, 2011, Jaime Calzada, Miguel Calzada and Cheryl Baca filed a class action complaint against TWC in the Superior Court of the State of California, County of Los Angeles, Case No. BC 453904 (the "Complaint"). On February 25, 2011, TWC timely removed this action to this Court on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005. The Complaint asserted only two causes of action against Defendant for:

A.    Violation of CAL. PENAL CODE § 632; and,

B.    Unfair Business Practices (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)

After several meet and confer conferences between counsel, i*n a su*ccessful effort to avoid Rule 12b(6) motion practice, Plaintiff filed a First Amended Complaint ("FAC") on April 4, 2011. Now, a single Plaintiff, Miguel Calzada, has filed a single cause of action for Violation of CAL. PENAL CODE § 632. TWC filed its Answer to the FAC on April 21, 2011.

### B.    PARTY CONTENTIONS

#### Plaintiff

Plaintiff contends that, as a common and uniform practice, Defendant recorded telephone conversations to its customer service call center without informing the individual callers that they were being recorded; all in Violation of CAL. PENAL CODE § 632. Prior to filing the Complaint, Plaintiff undertook an exhaustive investigation to confirm the allegations contained in the Complaint. In fact Plaintiff went so far as to retain an independent investigative agency, and that agency independently confirmed the allegation of the Complaint.

Plaintiffs have offered to meet informally to discuss the matters set forth by Defendant in the Declaration of Mr. Shimonovitz but those requests have been refused.

JOINT SCHEDULING CONFERENCE REPORT

**ARIAS OZZELLO & GIGNAC LLP**

Discovery will "ascertain" the class. If certain functions of the customer service system did not inform the customer that they were being recorded, then the identity of the class members can be ascertained from Defendant's own records; i.e., if someone called to access the Playboy channel, and that function did not provide the notice of recording, then we know that Playboy subscribers would be putative class members.

In addition, the types of calls which Plaintiff will use to define the class are not mere "billing" complaints like those addressed in the *ADT* action.   More importantly however, is the fact that it is the Plaintiff's position that the analysis here will never address Section 632(c).   As the California Supreme Court has stated in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95:  "[C]alifornia decisions repeatedly have invoked and vigorously enforced the provisions of section 632, *see, e.g., Flanagan v. Flanagan, supra*, 27 Cal.4th 766, 776, 117 Cal.Rptr.2d 574, 41 P.3d 575 ["the Privacy Act … protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved]".

### <u>TWC</u>

TWC denies the allegations in the FAC.   At all times from January 27, 2010, to the present (the time period relevant to this action), TWC had in place specific procedures for answering calls to its residential call centers and, therefore, ensuring compliance with Penal Code section 632 (*i.e.*, providing notice to callers that their calls may be monitored or recorded).   TWC explained this detailed process in a sworn declaration from a knowledgeable corporate representative, its Vice President of Information Technology for the West Region.   The declaration is attached hereto as **Exhibit A**.   TWC provided this declaration to Plaintiff's counsel on July 8, 2011, in advance of the Rule 26 conference.[1]

---

[1] At the parties' Rule 26 conference, Plaintiff's counsel claimed that, contrary to the evidence presented in TWC's declaration, they had information that indicated TWC did not provide notice that calls might be recorded in certain

**JOINT SCHEDULING CONFERENCE REPORT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIAS OZZELLO & GIGNAC LLP**

Plaintiff's allegations are not correct.  All calls to TWC's residential call centers are answered initially by TWC's automated voice response technology. To the extent this technology cannot resolve a caller's inquiry, it routes the call to one of TWC's call centers.  TWC provides automated notice to callers that their calls may be monitored or recorded prior to the time a customer service representative begins to speak with a caller and the call recording system begins to record the call (or a supervisor monitors the call).

Even if there were calls that were monitored or recorded without the caller receiving such prior notice (and there is no evidence that occurred), class certification is not appropriate for a number of reasons.  Most significantly, the class is not ascertainable as TWC has no way to identify those callers who allegedly did not receive notice.  Even if it were feasible, reviewing call recordings would not reveal whether a caller did or did not receive notice, because TWC provides the automated notice prior to connecting the call to a customer service representative and beginning the monitoring or call recording.  Thus, the call recording itself does not contain the automated notice.  Nor do TWC's customer files or records indicate whether or not TWC provided such notice, and TWC does not maintain lists of calls to its customer service centers.  The evidence is that TWC's automated system worked at all times since January 27, 2010, and TWC provided notice that calls may be monitored or recorded.

The only way to determine whether or not a caller received notice that his or her call might be monitored or recorded would be to ask each individual person who called TWC.  Relying on individual memories would be particularly problematic in this case, as callers cannot be expected to recall months after the fact whether or not they heard a two-second automated notice when calling TWC.  These individual issues and others prohibit certification in

circumstances.  TWC's counsel asked Plaintiff to provide this information, but Plaintiff declined.  TWC remains willing and available to discuss the evidence presented in the declaration with Plaintiff.

**JOINT SCHEDULING CONFERENCE REPORT**

this case.

In addition, callers to TWC's call centers do not have a reasonable expection of privacy.  To maintain a claim under section 632, Plaintiff must prove that his and other calls were confidential communications.  Cal. Pen. Code. § 632(c).  A communication is confidential within the meaning of section 632 "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Faulkner v. ADT Sec. Servs., Inc.*, 2011 WL 1812744, at *3 (N.D. Cal. May 12, 2011) (internal citations omitted).  Callers to customer service centers do not have a reasonable expectation of privacy. *See id*. at *4 ("Based on the nature of ADT's business, *i.e.*, home security, and the character of the telephone call, *i.e.*, a billing dispute, an ADT customer calling ADT to dispute a charge would not have an objectively reasonable expectation that the call would not be recorded or overheard.").

### C.   Amended Pleadings and Additional Parties

The parties agree the pleadings are not likely to be amended and no parties are likely to be added.

### D.   Discovery Plan

#### 1.   Rule 26(a)(1) Initial Disclosures:

The parties agree to serve initial disclosures no later than July 25, 2011, and begin a rolling production of identified documents upon the lodging of a protective order.

#### 2.   Anticipated Discovery:

##### a.   Plaintiff

Plaintiff, in preparation for class certification, intends to propound interrogatories, request for production, and request for admission related to, among other matters, (1) telephone call records at TWC call centers; (2) records and information related to Plaintiff; and (3) the identity and contact

**JOINT SCHEDULING CONFERENCE REPORT**

ARIAS OZZELLO & GIGNAC LLP

information of members of the Putative Class.  Plaintiff also intends to take Rule 30 depositions; depositions of call center witnesses; and potentially third parties.

### b. **TWC**

TWC intends to serve written discovery, and take the depositions of Plainiff Miguel Calzada, Jaime Calzada, and any other person Plaintiff alleges has knowledge of the allegations in the FAC.  Fact discovery should be completed no later than January 9, 2012.

### 3.     **Preservation of Evidence:**

Both parties acknowledge their duty to preserve relevant documents in accordance with relevant rules and case law.

### a. **Plaintif**

Plaintiff has acted reasonably at all times.  When Defendant indicated that the preservation of evidence could be costly, and without demanding any authentication of that allegation, Plaintiff immediately agreed to the preservation of only a few weeks of telephone calls.  Then, when Plaintiff asked to review even these few weeks of preserved evidence, to assist in making a determination as to whether the preservation of calls was even necessary, Plaintiff's request was refused.

### b. **TWC**

For five months, Plaintiff and TWC have attempted to resolve a disagreement regarding the need to preserve recordings of calls to its customer service numbers in California.  The parties disagree whether all call recordings are relevant to this case.

As TWC has explained to Plaintiff, TWC receives over 1.3 million calls per month, does not begin recording these calls until the time a caller is connected to a customer service agent and after the caller receives notice that his or her call might be recorded or monitored, and routinely preserves recordings of these calls for

**JOINT SCHEDULING CONFERENCE REPORT**

ARIAS OZZELLO & GIGNAC LLP

only six to eight months.  The cost of preserving these recordings for a longer period of time would exceed $100,000 per year.

There is no information on the recording itself that is relevant to this case and certainly nothing of sufficient value to outweigh the burden and cost of preserving all call recordings.  In fact, Plaintiff has not identified anything of value in the recordings.  If TWC is required to preserve all call recordings, TWC informed Plaintiff that it would seek to shift to Plaintiff the cost of preserving additional call recordings.

After weeks of negotiating this issue, on April 15, 2011, Plaintiff sent TWC a letter proposing a narrowed category of call recordings that it asked TWC to preserve.  On May 13, 2011, TWC responded to Plaintiff's letter, agreeing to preserve the identified call recordings and answering Plaintiff's other inquiries and demands.

As set forth in its May 13, 2011, letter to Plaintiff's counsel, TWC has preserved all recordings of calls made to California customer service numbers for residential subscribers for the periods of January 31 to February 6, 2010, November 6 to November 13, 2010, and December 11 to December 19, 2010, to the extent such call recordings existed as of May 13, 2011.  Although TWC does not believe these call recordings contain any information relevant to this case, it incurred the cost of approximately $10,000 to preserve those recordings in an effort to compromise with Plaintiff.  TWC reserves the right to seek reimbursement from Plaintiff or his counsel if appropriate.

TWC cannot yet provide the preserved recordings to Plaintiff due to privacy laws and cost.  Privacy laws prohibit TWC from disclosing personally identifiable information about its customers without their consent or a court order.  *See* 47 U.S.C. § 551(c).  TWC has not received consent or a court order.  Absent consent or a court order, the cost of preparing these recordings for production would be approximately $88.44 per call.  This cost includes locating specific calls,

ARIAS OZZELLO & GIGNAC LLP

**JOINT SCHEDULING CONFERENCE REPORT**

extracting each call, converting it to a playable file format, editing the recording to remove personal information (including credit card information, social security numbers, passwords, and certain content), and then placing the recording on an encrypted device. The only method to redact this information is to listen to the call and manually redact personal information through the use of certain software.

In addition to the above-described call recordings, Plaintiff requested that TWC preserve: (1) recordings of calls that commence with an initial recorded message; (2) recordings of the time a caller is on hold prior to being connected to a customer service representative; and (3) recordings of calls connected to a customer service representative before the caller receives a recorded message that the call may be recorded. TWC explained in its May 13 letter that it does not have any such recordings. TWC does not commence recording a call until it connects the call to a customer service representative at one of TWC's residential call centers, and it does not allow these customer service representatives to speak to a caller before the caller receives automated notice that his or her call may be monitored or recorded.

In addition, at Plaintiff's request, TWC provided a declaration from a knowledgeable representative, declaring, among other things, that: (1) TWC provides notice that a call may be monitored or recorded before a call is connected to a customer service representative; and (2) TWC does not record the portion of calls during which the caller is notified that the call may be monitored or recorded.

TWC believed that, by complying with Plaintiff's requests in its April 15 letter, the parties had resolved their disagreement regarding the preservation of call recordings. In the process of preparing this joint report, however, it appears that the parties have not, in fact, reached an agreement. Pursuant to Federal Rule of Civil Procedure 26(f)(3)(F), TWC requests that the Court address and resolve the parties' dispute concerning the preservation of call recordings at the scheduling conference on August 8, 2011.

**JOINT SCHEDULING CONFERENCE REPORT**

**ARIAS OZZELLO & GIGNAC LLP**

### 4.     Changes to Discovery Limitations:

The parties agree to conduct discovery pursuant to the Federal Rules of Civil Procedure.

#### a. <u>Plaintiff</u>

Plaintiff proposes that discovery should be conducted in phases.  Phase I should be limited to certification issues, with the discovery cut-off being set for the date of the hearing for the motion for class certification.  Phase II of the discovery process should deal with liability and damages.  Plaintiff proposes that the Court set a further Case Management Conference within fourteen (14) days of the Court's ruling on Plaintiff's Motion for Class Certification.  At that time, additional deadlines for Phase II discovery may be set.  Alternatively, Plaintiff proposes a discovery cut-off for Phase II discovery to be 90 days prior to trial.

#### b. <u>TWC</u>

TWC proposes that, consistent with Local Rule 23-2, the Court set the deadline for filing a motion for class certification at the earliest possible date.  In this case, the motion for class certification should be filed no later than October 17, 2011, over seven months after TWC removed the case to this Court.  Fact discovery should be completed by January 9, 2012, and all dispositive motions should be filed no later than January 17, 2012.

### 5.     Entry of An Appropriate Protective Order:

The parties agree that entry of a Protective Order is appropriate.  The parties will lodge with this Court a proposed Stipulation Re Protective Order prior to the scheduling conference on August 8, 2011.

#### E.     <u>Motions</u>

Plaintiff intends on filing a Motion for Class Certification based on the schedule set forth herein.

/ / /

/ / /

**JOINT SCHEDULING CONFERENCE REPORT**

ARIAS OZZELLO & GIGNAC LLP

### a. **Plaintiff**

Plaintiff's propose the following class certification briefing schedule:

March 5, 2012:          Deadline to filing motion for class
                        certification

April 2, 2012:          Deadline to file opposition brief

April 16, 2012:         Deadline to file reply brief

April 30, 2012:         Hearing

### b. **TWC**

TWC proposes the following class certification briefing schedule:

October 17, 2011:       Deadline to filing motion for class
                        certification

November 14, 2011:      Deadline to file opposition brief

November 28, 2011:      Deadline to file reply brief

December 12, 2011:      Hearing

TWC may file a motion for judgment on the pleadings and intends to file a motion for summary judgment.  TWC proposes a dispositive motion cutoff date of January 17, 2012.

### F.    **Trial Estimate**

The length of trial in this case will depend on whether a class is certified.  If the Court does not certify a class, the parties estimate the trial can be completed in one day.  If the Court certifies a class, the parties currently estimate a trial of seven days.

/ / /

/ / /

**ARIAS OZZELLO & GIGNAC LLP**

### G.   **Expert Witnesses**

Should either party determine that it will seek to introduce expert testimony in connection with a class certification motion, the parties will meet and confer about an appropriate schedule for the identification of such experts, the exchange of expert reports, and the deposition of such experts.  In the event that the parties cannot agree on these issues, they will seek the assistance of the Court.

### H.   **Trial Date**

TWC believes the case can be ready for trial on May 8, 2012.  **Exhibit B** is TWC's requested schedule.

Plaintiff believes that it is premature to set a trial date prior to a ruling on his anticipated motion for class certification.  Plaintiff proposes that the Court set a further scheduling conference after the hearing on the motion for class certification to discuss an appropriate trial date.  Pursuant to the Court's desire however, Exhibit B does include Plaintiff's requested schedule.

### I.   **Settlement Efforts**

To date, the parties have been unable to resolve this case.  In the event the parties cannot resolve this matter, they agree to a settlement conference before a district judge or a magistrate judge.

Dated:  July 25, 2011                    ARIAS OZZELLO & GIGNAC LLP

                                    By: */s/ Mark A. Ozzello*
                                    MIKE ARIAS
                                    MARK A. OZZELLO

                                    David R. Greifinger
                                    LAW OFFICES OF DAVID R.
                                    GREIFINGER

                                    Howard A. Goldstein
                                    LAW OFFICES OF HOWARD A.
                                    GOLDSTEIN

                                    Kenneth M. Lipton
                                    LAW OFFICES OF KENNETH M.
                                    LIPTON

                                    Attorneys for Plaintiffs

/ / /

**JOINT SCHEDULING CONFERENCE REPORT**

1    Dated:  July 25, 2011          WHITE & CASE LLP

2

3                          By: */s/ Bryan A. Merryman*
                              BRYAN A. MERRYMAN

4                          Attorneys for Defendant
                          TIME WARNER CABLE LLC

**ARIAS OZZELLO & GIGNAC LLP**

**JOINT SCHEDULING CONFERENCE REPORT**

# EXHIBIT A

1 BRYAN A. MERRYMAN (SBN 134357)
  bmerryman@whitecase.com
2 RACHEL J. FELDMAN (SBN 246394)
  rfeldman@whitecase.com
3 WHITE & CASE LLP
  633 W. Fifth Street, Suite 1900
4 Los Angeles, CA  90071-2007
  Telephone:  (213) 620-7700
5 Facsimile:   (213) 452-2329

6

7 Attorneys for Defendant
  TIME WARNER CABLE LLC
8

9     UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA

11

12 MIGUEL CALZADA,    No.  2:11-cv-01701-DMG-JCG

13    Plaintiff,   **DECLARATION OF SAGI
            SHIMONOVITZ**
14   v.

15 TIME WARNER CABLE LLC, a
  Delaware Corporation, and DOES 1
16 through 100, Inclusive,

17    Defendant.

18

19

20

21

22

23

24

25

26

27

28

LOS ANGELES 914898 (2K)

## DECLARATION OF SAGI SHIMONOVITZ

I, Sagi Shimonovitz, declare:

1.     I am Vice President of Information Technology for the West Region of Time Warner Cable ("TWC"). I have held this position since April 2008. Prior to holding this position, I was Senior Director of Information Technology for the West Region since September 2007.

2.     As Vice President of Information Technology, I manage the information technology infrastructure, including TWC's billing system, phone services, desktop support, network operations, systems, programming, and report, as it is used to serve TWC's residential services in the West Region. As part of my job responsibilities, I oversee the information technology used by TWC in the ordinary course of its business to assist in answering calls made to TWC's customer service centers, including the Interactive Voice Response system ("IVR"), Witness Systems Compliance Recording system ("Witness"), and the Avaya phone system ("Avaya"). I am personally familiar with each of these systems and the manner in which TWC has used them from January 27, 2010, to the present. Unless otherwise stated, all statements in this declaration regarding each of these systems and the manner in which TWC uses them apply only to the period between January 27, 2010, and the present.

3.     In preparing this declaration, unless otherwise stated, I have relied upon my personal knowledge and my review of TWC's business records, maintained under my supervision and control, including memoranda, reports and records of acts, events, and transactions made in the regular course of TWC's business at or near the time of the act, event, or transaction.

/ / /

/ / /

/ / /

LOS ANGELES 914898
(2K)

**The IVR Answers All Incoming Calls to TWC's Customer Service Centers**

4.      When an individual calls a California customer care number for residential subscribers, the IVR initially answers the call.  The IVR is an automated voice response system that serves several functions, such as identifying a caller's account information, providing relevant information in response to a caller's inquiries, and routing the call to the appropriate call center.

5.      If the IVR can identify the residential customer account, it attempts to resolve the customer's inquiry.  For example, if the customer has a repair issue, the IVR provides the customer with self-help options to resolve the problem.  The IVR also allows the customer to check his or her account balance and make a payment.

6.      If the caller's inquiry cannot be resolved through the IVR's automated response system or the caller prefers to speak to a customer service representative, the IVR routes the call to either an in-house or outsourced call center.  TWC's in-house call centers for California residential subscribers are located in Culver City, Hollywood, Garden Grove, Ontario, Palm Desert, and San Diego, California, and Colorado Springs, Colorado.  TWC outsources certain of its customer service operations to Teletech Holdings, Inc. ("Teletech"), Convergys Corporation ("Convergys"), and 24x7 Live Support ("24x7").

7.      The IVR routes the call to the call center best matched to respond to the customer's specific inquiry.  For example, if the call involves certain high-speed internet or telephone troubleshooting issues or other internet/phone issues unrelated to connectivity, the IVR routes the call to the National Help Desk ("NHD").  Some NHD calls are forwarded to a call center run by Convergys, and others to a call center run by 24x7.

**TWC Provides Automated Notice That Calls May Be Recorded**

8.      Regardless of whether the IVR routes the call to an in-house or an outsourced call center, the recording of the call does not begin until the caller is first connected to a service representative.

LOS ANGELES 914898
(2K)

DECLARATION OF SAGI SHIMONOVITZ

1        9.    At each of TWC's in-house call centers, TWC uses the Witness

2    technology to record calls to TWC's customer service centers for training and

3    supervision purposes.

4        10.   Based on communications with representatives from the three

5    outsourced call centers, each group records approximately 10% of all calls that it

6    answers.  Convergys and 24x7 use a NICE Systems product to do the recording.

7    TeleTech uses a proprietary solution.

8        11.   I have personal knowledge that TWC uses an internal announcement

9    board located within its Avaya phone system to provide automated notice to

10   residential callers that their calls may be monitored or recorded.  The Avaya

11   technology allows TWC to provide this automated notice to callers by recording an

12   announcement and inserting it into the call handling steps, *i.e.*, the programming for

13   call routing, which Avaya refers to as "vector programming."

14       12.   The automated notice created by TWC and inserted into the vector

15   programming states: "Thank you for calling Time Warner Cable.  To assure quality

16   service, this call may be monitored or recorded by supervisory personnel."

17       13.   Pursuant to TWC's regular business practice, with the one exception

18   described below in paragraph 14, the Avaya internal announcement board provides

19   automated notice that calls may be monitored or recorded after the caller has gone

20   through the IVR's automated response system, but before the IVR routes the caller

21   to a service representative at either the in-house call centers or at the outsourced call

22   centers.  Thus, regardless of whether the IVR routes a call to an in-house call center

23   or one of the call centers run by TeleTech, Convergys, or 24x7, with the one

24   exception described below, Avaya provides notice to the caller that the call may be

25   monitored or recorded prior to the time a service representative begins to speak to

26   the caller and either Witness or the outsourced company's call recording system

27   begins to record the call.

28

LOS ANGELES 914898
(2K)

DECLARATION OF SAGI SHIMONOVITZ

14.     There is only one exception to this routing and automated notice procedure.  In cases in which IVR routes a call to the NHD call centers run by Convergys or 24x7, the Convergys and 24x7 phone systems provide automated notice to the caller that his or her call might be monitored or recorded.  TWC requires Convergys and 24x7 to utilize the same Avaya server technology used by TWC to provide automated notice to callers that their calls may be monitored or recorded.  In either English or Spanish, depending on the language preference selected by the caller, the Avaya message board used by Convergys and 24x7 provides the following automated notice to all callers routed to the NHD: "Thank you for calling the Road Runner National Help Desk.  Your call may be monitored or recorded for quality assurance."  Each caller routed to the NHD receives this automated message after he or she exits the IVR, but before reaching a service representative.

15.     To the best of my knowledge, TWC's Avaya announcement board has worked, and effectively provided notice to individuals that called TWC's customer service centers that their calls may be monitored or recorded, at all times from January 27, 2010, to the present.  To confirm that the Avaya announcement board message notifying callers that their calls may be monitored or recorded worked during this time period, I instructed a TWC employee within my department and under my supervision to check both the message on the announcement board and also looked at the vector programming for Avaya.  The announcement board message and the vector programming both indicated that the Avaya announcement board gave (and continues to give) automated notice that customer calls may be monitored or recorded at all times from January 27, 2010, to the present.  Further, I instructed the same TWC employee within my department and under my supervision to review TWC's business records and files.  He found no indication that Avaya did not work properly at any time during this time period.

16.     Based on communications with Convergys's Technology Solutions Manager, who oversees the technology projects related to TWC, I have confirmed that Convergys's Avaya announcement board worked, and gave notice to individuals that called TWC's customer service centers that their calls may be monitored or recorded, at all times from January 27, 2010, to the present.

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct. Executed on June 1, 2011, at El Segundo, California.

Sagi Shimonovitz

LOSANGELES 914898
(2K)

DECLARATION OF SAGI SHIMONOVITZ

# EXHIBIT B

Plaintiff:

1   Judge Dolly M. Gee

2   **SCHEDULE OF PRETRIAL & TRIAL DATES WORKSHEET**

3
    Case No.                                  Case
4       2:11-cv-01701-DMG -JCG              Name:   Calzada v. Time Warner Cable LLC

| MATTER | JOINT REQUESTED DATE or PLNTF/DEFT REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL**  [ ] Court  [X] Jury  Duration Estimate:  7 days | Oct. 9, 2012  (Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")**  4 wks before trial | Sept. 11, 2012  (Tuesday) | 2:00 p.m. |

| MATTER | TIME COMPUTATION | JOINT REQUESTED DATE or PLNTF/DEFT REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 90 days after scheduling conf | Nov. 8, 2011 |
| Non-Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 14 wks before FPTC | June 12, 2012 |
| Motion Cut-Off  (filing deadline) | at least 13 wks before FPTC | June 19, 2012 |
| Initial Expert Disclosure & Report Deadline | at least 9 wks before FPTC | July 17, 2012 |
| Rebuttal Expert Disclosure & Report Deadline | at least 5 wks before FPTC | Aug. 7, 2011 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 3 wks before FPTC | Aug. 21, 2012 |
| Settlement Conference Completion Date | at least 4 wks before FPTC | Aug. 28, 2012 |
| Motions in Limine Filing Deadline | at least 3 wks before FPTC | Aug. 28, 2012 |
| Opposition to Motion in Limine Filing Deadline | at least 2 wks before FPTC | Sept. 4, 2012 |
| Other Dates: (e.g., class cert motion cut-off, early mediation, etc.) | at least 90 days after complaint served (unless longer time justified) | March 5, 2012 |

**EXHIBIT A**

DEFENDANT TIME WARNER CABLE LLC:

1   Judge Dolly M. Gee

2   **SCHEDULE OF PRETRIAL & TRIAL DATES WORKSHEET**

3

4   Case No.    CV 01701-DMG(JCGx)    Case Name:    Calzada v. Time Warner Cable LLC

| MATTER | JOINT REQUESTED DATE or PLNTF/DEFT REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL**    [x] Court [ ] Jury <br> Duration Estimate: | May 8, 2012 <br> (Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")** <br> 4 wks before trial | April 10, 2012 <br> (Tuesday) | 2:00 p.m. |

| MATTER | TIME COMPUTATION | JOINT REQUESTED DATE or PLNTF/DEFT REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 90 days after scheduling conf | Nov. 8, 2011 |
| Non-Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 14 wks before FPTC | Jan. 9, 2012 |
| Motion Cut-Off (filing deadline) | at least 13 wks before FPTC | Jan. 17, 2012 |
| Initial Expert Disclosure & Report Deadline | at least 9 wks before FPTC | Feb. 6, 2012 |
| Rebuttal Expert Disclosure & Report Deadline | at least 5 wks before FPTC | Mar. 5, 2012 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 3 wks before FPTC | Mar. 19, 2012 |
| Settlement Conference Completion Date | at least 4 wks before FPTC | Mar. 12, 2012 |
| Motions in Limine Filing Deadline | at least 3 wks before FPTC | Mar. 19, 2012 |
| Opposition to Motion in Limine Filing Deadline | at least 2 wks before FPTC | Mar. 26, 2012 |
| Other Dates: (e.g., class cert motion cut-off, early mediation, etc.) | at least 90 days after complaint served (unless longer time justified) | Oct. 17, 2011 |

**EXHIBIT A**