Mark A. Ozzello, Esq. (CSB # 116595)
Mike Arias, Esq. (CSB #115385)
**ARIAS, OZZELLO & GIGNAC, LLP**
6701 Center Drive West, Suite 1400
Los Angeles, California 90045
Telephone:  (310) 670-1600
Facsimile:  (310) 670-1231
e-mail (Mark Ozzello):  mozzello@aogllp.com

David Greifinger, Attorney at Law (CSB # 105242)
1801 Ocean Park Blvd., Suite 201
Santa Monica, California 90405
Telephone (310) 452-7923 Facsimile (310) 450-4715
e-mail:  tracklaw@verizon.net

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| MIGUEL CALZADA, an individual, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TIME WARNER CABLE LLC, A Delaware corporation and DOES 1 through 100, Inclusive, <br><br> Defendants. | Case No.: 2:11-CV-01701-DMG (JCGx) <br><br> Honorable Dolly M. Gee Courtroom: 7 <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR:** <br><br> 1. **CLASS CERTIFICATION;** <br> 2. **APPOINTMENT OF REPRESENTATIVE PLAINTIFFS; AND,** <br> 3. **APPOINTMENT OF CLASS COUNSEL;** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed Concurrently with: <br> 1. [Proposed] Order; <br> 2. Compendium of Declarations; and, <br> 3. Cited Portions of PMK Deposition Testimony] <br><br> **Hearing Date:  January 6, 2012** <br> **Time of Hearing:  2:00 p.m.** |

*(left margin vertical text)* **ARIAS OZZELLO & GIGNAC LLP**

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**Courtroom: 7**
Removed on: February 25, 2011
Trial Date: None set

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that, on January 6, 2012, at 2:00 p.m., or as soon thereafter as this matter may be heard by and before the Honorable Dolly M. Gee, in Courtroom 7 of this United States District Court, located at 312 North Spring Street, Los Angeles, California, 90012, plaintiff Miguel Calzada ("Plaintiff") shall move this Court, under Federal Rules of Civil Procedure, Rule 23, for an order:

1)      Certifying, as to the claim for relief alleged in the First Amended Complaint, a plaintiff class (the "Class") defined as follows:

"All California residents whose telephone calls to or from Time Warner Cable (TWC) were recorded by TWC without the person being notified that the calls were being recorded, from January 27, 2010 to the present."

2)      Appointing Plaintiff Miguel Calzada as the representative of the Class; and

3)      Appointing Mark A. Ozzello, Esq., of the law firm of Arias Ozzello & Gignac LLP; David R. Greifinger, Esq. of the Law Offices of David R. Greifinger; and Howard A. Goldstein, Esq. of the Law Offices of Howard A. Goldstein as Class Counsel under Federal Rules of Civil Procedure, Rule 23(g).

This motion is brought on the grounds that this action may be properly certified as a class action under Federal Rules of Civil Procedure, Rule 23(a) in that:

/ / /

Page 2

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

/ / /

    (a)   the Class is so numerous (numbering in the hundreds of thousands or more) that joinder of all members of the Class in this action is impracticable;

    (b)   there are questions of law and fact which are common to the members of the Class;

    (c)   the claims of Plaintiff are typical of the claims of each member of the Class; and,

    (d)   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.

This motion is also brought on the further grounds that the Class may be properly certified under Federal Rules of Civil Procedure, Rule 23(b)(3) in that:

    (a)   the questions of law and fact common to the members of the Class predominate over the questions of law and fact, if any, which affect only individual members of the Class; and,

    (b)   a class action is superior to any other available method for the fair and efficient adjudication of the claims for relief asserted in this action.

This motion is based upon this Notice, the Memorandum of Points and Authorities, the declarations filed herewith as well as the exhibits thereto, the pleadings and records on file in this action, of which the Court is requested to take judicial notice under Federal Rules of Evidence, Rule 201, and any additional oral argument and documentary evidence that may be presented at the hearing on this motion.

/ / /

/ / /

/ / /

/ / /

/ / /

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

1    / / /

2         This motion is brought following the conference of counsel pursuant to

3    Local Rule 7-3 of the U.S. Central District Local Rules which took place on

4    August 8, 2011, and is being filed in accordance with the schedule established

5    by the Court on August 8, 2011.

6

7    Dated:  November 18, 2011      ARIAS OZZELLO & GIGNAC LLP

8

9                                    By: */s/ Mark A. Ozzello*
                                          MIKE ARIAS
10                                        MARK A. OZZELLO

11                                        David R. Greifinger
                                          LAW OFFICES OF DAVID R.
12                                        GREIFINGER

13                                        Howard A. Goldstein
                                          LAW OFFICES OF HOWARD A.
14                                        GOLDSTEIN

15                                        Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ................................................................... 1

   A.    Facts Related To Plaintiff ............................................................ 1

   B.    Facts Related To Defendant ......................................................... 2

   C.    The Findings of Plaintiff's Expert .............................................. 4

III. THE CLASS SATISFIES ALL PROCEDURAL REQUIREMENTS ......... 9

   A.    TWC Violated The California Penal Code .................................. 9

      1.     The California Penal Code Prohibits The Unauthorized Recording of Telephone Calls. ......................................... 9

      2.     A Communication Is Confidential If A Party Reasonably Expects It Is Not Being Overheard Or Recorded. .............. 10

      3.     Plaintiff's Telephone Calls to TWC Were Confidential. ... 11

   B.    The Class is Ascertainable ......................................................... 12

   C.    The Class Satisfies Each of The Statutory Prerequisites For Class Certification Under Rule 23(a) .............................................. 14

      1.     The Members of The Class Are So Numerous That Joinder Is Impracticable .......................................................... 15

      2.     There Are Questions of Law And Fact Common To The Members of The Class. .......................................... 15

      3.     Plaintiff's Claims Are Typical of The Claims of The Class Members ............................................................. 16

      4.     Plaintiff Will Adequately Represent The Interests of Each Class Member. .......................................................... 17

IV. THE CLASS SHOULD ALSO BE CERTIFIED UNDER RULE 23(B)(3) .... 19

   A.    Rule 23(b)(3)(A) ........................................................................ 20

   B.    RULE 23(b)(3)(B) ...................................................................... 21

   C.    RULE 23(b)(3)(C) ...................................................................... 22

Page i

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

1    D.    RULE 23(b)(3)(D).....................................................................................22

2    V. CONCLUSION.........................................................................................24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIAS OZZELLO & GIGNAC LLP**

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

## CASES

*Coulter v. Bank of America* (1994) 28 Cal.App.4th 923 .......................................... 10

*Flanagan v. Flanagan* (2002) 27 Cal.4th 766 .................................................. 10, 11

*Frio v. Superior Court* (1988) 203 Cal.App.3d 1480 ........................................ 10, 11

*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156 .................. 11, 12

*O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241 .................................................. 11

## STATUTES

CAL. PENAL CODE § 632 ..................................................................................... 10, 16

FED. RULES OF CIV. PROC., RULE 23(b)(3)(A) ........................................................ 20

FED. RULES OF CIV. PROC., RULE 23(b)(3)(B) ........................................................ 22

FED. RULES OF CIV. PROC., RULE 23(b)(3)(D) ........................................................ 22

## RULES

FED. RULES OF CIV. PROC, RULE 23 ............................................ 15, 16, 19, 20, 23

FED. RULES OF CIV. PROC., RULE 23(a) .................................................................. 14

FED. RULES OF CIV. PROC., RULE 30(b)(6) ............................................................... 2

## FEDERAL CASES

*Aiken v. Obledo*,
  442 F. Supp. 628 (E.D.Cal. 1977) ..................................................................... 13

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 18, 21

*Arthur Young & Co. v. United States Dist. Court*,
  549 F.2d 686 (9th Cir. 1977), cert. den. 434 U.S. 829 (1977) ............................ 14

*Blackie v. Barrack*,
  524 F.2d 891, (9th Cir. 1975), cert. den. 429 U.S. 816 (1976) ............... 14, 17, 20

*Crawford v. Honig*,
  37 F.3d 485 (9th Cir. 1995) .............................................................................. 18

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

**ARIAS OZZELLO & GIGNAC LLP**

1   *Deposit Guaranty Nat. Bank v. Roper*
2     (1980) 445 U.S. 326 ...................................................................................21
3   *Deteresa v. American Broadcasting Companies, Inc.*,
4     121 F.3d 460, (9th Cir. 1997).......................................................................11
5   d*uPont Glore Forgan, Inc. v. American Telephone and Telegraph Co*.
6     69 F.R.D. 481 (S.D.N.Y. 1975) ...................................................................20
7   *Eisen v. Carlisle & Jacquelin*,
8     417 U.S. 156 (1974) .....................................................................................14
9   *Haley v. Medtronic, Inc.*,
10    169 F.R.D. 643 (C.D.Cal. 1996) ...........................................14, 15, 16, 18, 22, 23
11  *Hanlon v. Chrysler Corp.*,
12    150 F.3d 1011 (9th Cir. 1998).................................................................16, 17
13  *Harris v. Palm Springs Alpine Estates, Inc.*,
14    329 F.2d 909 (9th Cir. 1964).................................................................15, 17
15  *Ikonen v. Hartz Mountain Corp.*,
16    122 F.R.D. 258 (S.D.Cal. 1988)...................................................................15
17  *In re Badger Mountain Irrigation Dist. Securities Litigation*,
18    143 F.R.D. 693 (W.D.Wash. 1992) ........................................................15, 16
19  *In re Computer Memories Securities Litigation*,
20    111 F.R.D. 675 (N.D.Cal. 1986) ..................................................................15
21  *In re Northern Dist. of California Dalkon Shield IUD Products Liability Litigation*,
22    693 F.2d 847 (9th Cir. 1982), cert. den. 459 U.S. 1171 (1983).........................18
23  *In re Sugar Industry Antitrust Litigation*,
24    73 F.R.D. 322 (E.D.Pa. 1976) .....................................................................22
25  *In re United Energy Corp., Etc., Securities Litigation*,
26    122 F.R.D. 251 (C.D. Cal. 1988) ................................................................16
27  *Lerwill v. In-flight Motion Pictures, Inc.*,
28    582 F.2d 507 (9th Cir. 1978).......................................................................18

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**ARIAS OZZELLO & GIGNAC LLP**

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997)...................................................................21

*O'Connor v. Boeing North American, Inc.*,
   184 F.R.D. 311 (C.D.Cal. 1998) .............................................................13

*Rosario v. Livaditis*,
   963 F.2d 1013, (7th Cir. 1992),
   rehg. en banc den., cert. den. 506 U.S. 1057 (1993)................................16

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003).............................................................17, 18

*Sterling v. Velsicol Chemical Corp.*,
   855 F.2d 1188 (6th Cir. 1988).................................................................19

*Sullivan v. Chase Investment Services of Boston, Inc.*,
   79 F.R.D. 246 (N.D. Cal. 1978)..............................................................17

*Weinberger v. Thornton*,
   114 F.R.D. 599 (S.D.Cal. 1986)..............................................................15

*Wofford v. Safeway Stores, Inc.*,
   78 F.R.D. 460 (N.D.Cal. 1978)...............................................................17

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# I.

# INTRODUCTION

This is a class action for violations of California state law arising out Time Warner Cable's (TWC) failure to notify California residents that it recorded their telephone calls.  This action is a prototypical class action that satisfies each of the procedural prerequisites for class certification under RULE 23 of the FEDERAL RULES OF CIVIL PROCEDURE.  The operative First Amended Complaint (FAC) alleges a single claim that the District Courts in this Circuit, and others, have consistently concluded should be adjudicated on a class-wide basis.

# II.

# FACTUAL BACKGROUND

## A.    Facts Related To Plaintiff

Plaintiff is a resident of Van Nuys California.  (Calzada Decl., ¶ 1.)  On May 27, 2009, he lived with his brother, Jaime Calzada, who had TWC television service in his home.   Plaintiff's brother and he shared the costs of the TWC service.  (Calzada Decl., ¶ 13.)

On May 27, 2009, Plaintiff called TWC at the toll-free number (888) 892-2253 from his brother's telephone [(818) 939-1100].   (Calzada Decl., ¶ 16.) Plaintiff had obtained the aforementioned TWC telephone number through the Internet by inputting his zip code. (Calzada Decl., ¶ 15.)  Plaintiff called on behalf of his brother regarding a billing issue.  (Calzada Decl., ¶ 16.)  After Plaintiff pressed a series of prompts, an operator for TWC immediately came on the line. Plaintiff did not receive any prerecorded message that his call might be, or was being, recorded.  (Calzada Decl., ¶ 17.)

During, and in the context of Plaintiff's conversation with the customer service representative regarding the billing issue, the customer service representative told Plaintiff that this particular call was being recorded, and that the

Page 1

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

previously related call had been recorded.  (Calzada Decl., ¶ 18.)

Eight months later, on February 6, 2010, Plaintiff was residing in Sherman Oaks, California.  On that day Plaintiff called TWC to order "Pay-Per-View" for UFC #109 on his girlfriends account.  He called TWC toll-free number (866) 892-2253.  Plaintiff followed a series of prompts, and was put on hold due to high call volume.  While waiting for a customer service representative he was subjected to TWC advertisements.  Plaintiff then ordered the pay-per-view event after resolving a billing issue that had prevented him from ordering the event via the use of his remote control.  (Calzada Decl., ¶ 20.)

At no time during the February 6, 2010 call did TWC inform Plaintiff, either by recorded message, or in person, that his call would be, or might be recorded. (Calzada Decl., ¶ 21.)  Plaintiff intended and understood that these telephone calls, with the TWC call center, would be confidential.  (Calzada Decl., ¶ 22.)

**B.    Facts Related To Defendant**

Defendant TWC provides cable television, Internet, and telephone service to customers in the State of California and nationwide.  TWC operates internal and outsourced call centers to answer customer telephone calls. [Shimonovitz Depo.[1] 11:16-24.]  TWC also contracts with third-party call centers to field its telephone calls. [Shimonovitz Depo. 12:1-3.]

TWC receives "millions of calls." [Shiminovitz Depo. 66:17-19.]  For example, in January 2010, 165,435 calls were routed to sales agents. [Shiminovitz Depo. 122:7-13.]  Calls to TWC are routed through computerized systems.  These systems include:

---

[1] Mr. Sagi Shimonovitz is TWC's Vice President for Information Technology. [Shinovitz Depo. 9:17-19.]  TWC designated Mr. Shimonovitz to testify at the November 9, 2011 deposition under FED. RULES OF CIV. PROC., RULE 30(b)(6).  A copy of the deposition notice is submitted with this motion.

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

1 • An Interactive Voice Response, or "IVR." [Shimonovitz Depo. 20:14-15.]

2 • An Automatic Call Distributor, or "ACD." [Shimonovitz Depo. 20:10-13.]

3 An ACD can also be called a Private Branch Exchange or "PBx." [Shimonovitz

4 Depo. 20:17-20.]   TWC's internal ACD is referred to as its "phone switch[2]."

5 (Shimonovitz Depo. 22:21-25; 23:1.]

6 Calls to TWC initially enter TWC's IVR.   A separate company, West

7 Interactive operates TWC's IVR under a contract with TWC. [Shimonovitz Depo.

8 20:21-25; 21:1-2.] The IVR, through technology, then identifies where to direct

9 the particular caller.   The IVR is fully automated; i.e., nobody answers the

10 telephone at the IVR level. [Shimonovitz Depo. 43:4-9.]

11 The IVR solves some issues on its own and sends others to the ACD (or

12 phone switch), which is a TWC internal phone switch.   A program known as

13 "Avaya" operates TWC's internal phone switch. [Shimonovitz Depo. 65:18-20.]

14 Most calls go to TWC's phone switch, but some go to an outsourced switch.

15 [Shimonovitz Depo. 51:20-25; 52:1.] Every call that passes through the TWC IVR

16 goes to TWC's Avaya internal phone switch or to the switch for a third-party call

17 center.   [Shimonovitz Depo. 66:5-11; 62:15-25; 63:1.]   TWC makes periodic

18 changes to its internal phone switch. [Shimonovitz Depo. 75:6-14.]   Importantly

19 for our purposes here, "Change Management Orders" ("CMOs") to TWC's Avaya

20 phone switch would demonstrate a situation where the switch failed to provide the

21 caller with a prerecorded message. [Shimonovitz Depo. 98:2-7.] TWC's ticketing

22 system for CMOs is called "Footprints." [Shimonovitz Depo. 138:13-25; 139:1-

23 14.]

24 The "National Help Desk", an outsourced call center for TWC, has its own

25 phone switch. [Shimonovitz Depo. 41:18-25; 42:1.]   National Help Desk answers

26

27 [2] Mr. Shiminovitch used the terms "ACD" and "phone switch" interchangeably in

28 his deposition, which is reflected in this memorandum.

Page 3

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

calls classified as "Tech Tier 2," which concern problems with TWC's e-mail service. [Shimonovitz Depo. 45:7-18; 125:18-19.]

Whether internal or external, the phone switch [when properly programmed and operating as intended] plays any prerecorded messages, and then routes the call to a live agent.  [Shimonovitz Depo. 20:20-25; 21:1-16.]   The recorded message occurs in the phone switch message board.  [Shimonovitz Depo. 66:12-16.]  The recorded message is to be played before a live caller goes into the queue to speak to an agent.   [Shiminovitz Depo. 62:16-25; 63:1-5.]   And, most importantly for certification purposes, each telephone call and each telephone number from which calls are made, that go into the switch can be identified. [Shimonovitz Depo. 61:4-11.]

A program called "Witness" then records the calls, but the Witness program has nothing to do with the prerecorded message.  [Shimonovitz Depo., Vol. 1, p. 24:9-17.]  Witness also captures the caller's telephone number, and through this system, TWC [and this Court] can link the caller's telephone number to the caller's TWC account.  [Shimonovitz Depo. 27:22-25; 28:19-22.]  Then, TWC [and this Court] can link the TWC account to a customer name and a physical address – all through the account information.  The TWC customer is identified on the records with the account number.  [Shimonovitz Depo. 28:24-25; 29:1-2; 29:4-6.]

TWC's internal call centers *attempt to* record 100 percent of the inbound calls, and the external call centers record about 10 percent of the calls. [Shiminovitz Depo. 129:13-25; 130:1-12.]  TWC also records its outbound calls. [Shimonovitz Depo. 130:14-25; 131:1-4; **Exh. 6** (April 11, 2011 e-mail.)

**C.**   **The Findings of Plaintiff's Expert**

Plaintiff's expert, Martin Prunty, is an expert in the field of contact center management and technology.  This includes the technology and operations of automated telephone-call answering systems.  For over 20 years, Mr. Prunty has

Page 4

ARIAS OZZELLO & GIGNAC LLP

worked in a variety of organizations, across multiple industries, providing analysis and guidance to improve the manner in which customer sales, service, and support are delivered.  Mr. Prunty has consulted on a variety of issues related to telephone call centers, and has served as an expert witness [for both plaintiffs and defense] in class actions for issues related to call centers, including call monitoring and recording.  [Prunty Decl., ¶¶ 4,5,7,8.]

Mr. Prunty reviewed the following documents in this action:

* Plaintiff's FAC;
* Plaintiff's written discovery responses;
* Defendant's written discovery responses;
* The Shimonovitz deposition transcript and exhibits;
* Verint ContactStore for Communication Manager Release 7.8 Service Pack 1 Planning, Installation and Adminstration Guide Issue 6 October, 2008; and,
* Avaya Communication Release 2.2 Call Center Software Call Vectoring (EAS) Guide.  [Prunty Decl., ¶ 13.]

Mr. Prunty reports:

• In his deposition, Mr. Shimonovitz, dismissed the possibility that callers to TWC within the state of California had been recorded without having received a pre-recorded notification that their call would be recorded.  He testified there were only two (2) ways a caller would not have received a pre-recorded announcement: "...*either they did not pay attention when the message was playing or they never got to speak to an agent.*" [Shimonovitz Depo, p. 100:9-11.]  [Prunty Decl., ¶ 14.]

• Mr. Shimonovitz confirmed however, that TWC does not have a specific process for testing all incoming local or toll-free numbers to ensure that every caller receives a pre-recorded announcement message notifying them in advance that their call will be recorded:  "*No.  The test calls are not made to identify the message.  The test calls – you asked me how would I know if there's a message.  If*

Page 5

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

*I call and make a test call, I would hear the message.  The test calls are not to hear the message.   They are to evaluate routing."* [Shimonovitz Depo. 69:6-11.] [Prunty Decl., ¶ 15.]

• During the subsequent review of TWC documents, and contrary to the testimony of Mr. Shimonovitz, the Plaintiff has identified specific evidence that clearly substantiates its position that some or all California callers to TWC call centers within the state of California did not receive a recorded announcement notifying them in advance that their call would be recorded.  [Prunty Decl., ¶ 16.]

• According to TWC's own documents (document spreadsheet 1977, CR# 766 and # 771, found in tab "CM Data," rows 114 and 115), at least twenty-six (26) VDNs (Vector Directory Numbers is a programming term in the Avaya telephone systems) were reported to be **"out of compliance"** on September 24, 2010, because they did not provide callers with a pre-recorded announcement indicating that calls would be recorded.   A unique VDN is assigned to each incoming local and/or toll-free number answered by the system.   Therefore, CR# 766 and 771 indicated that at least 26 local and/or toll-free numbers were receiving calls and were not providing callers with the required warning announcement that the call was going to be recorded.  [Prunty Decl., ¶ 17.]

• While TWC documents indicate that the problems identified in CR# 766 and 771 were eventually corrected on October 6, 2010, there is no indication of when the problem originally occurred or what caused it.  Therefore, it is very likely that the problem existed for a much longer period than the thirteen (13) days that transpired from the time the problem was first reported until it was resolved. [Prunty Decl., ¶ 18.]

• According to Mr. Shimonovitz, the original installation of the Avaya system occurred sometime in 2006.  At that time, toll-free and local numbers were programmed in the Avaya system.  "*The numbers were set up around the time we introduced the switch to point to the new switch.  The numbers could have been*

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

*there for ten years, but when we set up the new switch they had to be set up with that switch.  So probably around 2006 those numbers were there."* [Shimonovitz Depo. 95:6-10.] [Prunty Decl., ¶ 20.]

•  It is a distinct possibility that the VDNs listed in CR #766 and CR #771 were never programmed to provide a pre-recorded message notifying callers that their calls were being recorded, beginning with the original installation of the Avaya system in 2006.  [Prunty Decl., ¶ 21.]

•  In the 13-day period alone between September 24, 2010 and October 6, 2010, for the VDNs identified in CR# 766  and CR# 771 that were not able to provide callers with a pre-recorded message, it is likely that literally tens of thousands of callers received no warning their calls were being recorded.  [Prunty Decl., ¶ 22.]

•  There is reason to believe that other toll-free or local numbers used by TWC, in addition to those listed in TWC documents (CR# 766 and CR# 771), may also omit (or may have omitted) the required pre-recorded announcement.  Since Mr. Shimonovitz was (unjustifiably) adamant that all callers received the pre-recorded announcement message (except if they weren't listening or the system went down), and because there was no defined practice for testing all toll-free and local numbers for the specific purpose of ensuring that callers received the pre-recorded message, it is very likely that other local or toll-free numbers do not receive the required pre-recorded announcement.  [Prunty Decl., ¶ 23.]

•  A method exists to identify the specific callers who have been answered by TWC without having been notified in advance that their call would be recorded.  [Prunty Decl., ¶ 24.]

•  A unique VDN is associated with each specific local and/or toll-free number that is answered by the Avaya system.  CR# 766 and CR# 771 in spreadsheet 1977 lists every VDN known to the defendant that did not provide callers with a notification that their call would be recorded.  This list can be easily

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

cross-referenced to the specific local and/or toll-free numbers used by callers who did not receive the recording using information readily available to the defendant. [Prunty Decl., ¶ 25.]

• Each VDN is "pointed" to a vector, or set of programming instructions, found in the Avaya system. Each vector includes a step-by-step set of instructions that indicates, amongst other things, whether or not a recorded announcement is given to the caller and which call center group (Tech 1, Tech 2, Customer Service, etc.) within TWC will actually answer the calls to that specific telephone number. A check of all VDNs and vectors in the Avaya system will easily determine whether other recorded messages were not provided to callers. Once again, this information is readily available to the class. [Prunty Decl., ¶ 26.]

• The Verint ContactStore for Communications Manager (Verint system), used by TWC to record calls, captures the VDN, date, time and calling number through ANI- "automatic number identification", for each recorded call. Using the Verint system's bulk search capabilities, a simple search on each of the VDN's listed in CR #766 and CR# 771 will identify:

∗ All calls impacted during the specified time period;

∗ Only calls answered without receiving a recorded announcement; and

∗ All calls originating within the state of California. [Prunty Decl., ¶ 27.]

• According to an internal TWC e-mail, it is the defendant's practice to routinely record both incoming and outgoing calls. Unlike incoming calls, where a properly-programmed and managed ACD (Automatic Call Distributor) system is able to provide every caller with a pre-recorded notification to callers, there is typically no similar technological alternative that applies to outbound calls. As a result, it is typically necessary for each actual employee who places the call, or who is connected to the caller via an automated dialer, to provide such verbal notice as soon as each connection to the caller is made. [Prunty Decl., ¶¶ 29, 30.]

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

The Plaintiff's initial findings suggest that TWC lacks sufficient internal processes and controls necessary to maintain strict compliance with this important notification requirement with respect to incoming calls, where notification can be managed more easily.  The documents clearly establish there is no truth to TWC's assertion that every caller receives a recording notification message. The reality is that they do not.  [Prunty Decl., ¶ 31.]

Since the defendant places numerous outgoing calls each month, using its own call centers and those of third-parties with whom it contracts, and the customer on those outbound calls must be verbally-warned at the beginning of each call it is highly-likely that full compliance with the requirement to provide notice of recording does not occur with this type of call either.  As TWC records all calls and these recordings are stored or archived on a server, each recording file will either provide evidence that notice has, or has not, been provided to the caller. By taking only a sampling of outgoing call recordings, the Plaintiff will easily and uniformly, determine whether or not TWC is in compliance with the requirement of providing notice of recording to the called party on the outbound calls.  [Prunty Decl., ¶¶ 32, 33.]

### III.

### THE CLASS SATISFIES ALL PROCEDURAL REQUIREMENTS

Plaintiff seeks certification of the following class:

"All California residents whose telephone calls to or from Time Warner Cable (TWC) were recorded by TWC without the person being notified that the calls were being recorded, from January 27, 2010 to the present."

**A.**   **TWC Violated The California Penal Code**

**1.**   **The California Penal Code Prohibits The Unauthorized Recording of Telephone Calls.**

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

CAL. PENAL CODE § 632, subdivision (a) prohibits "persons," including entities such as TWC, from intentionally recording a confidential communication by means of an electronic recording device without the consent of all parties. "The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

## 2. A Communication Is Confidential If A Party Reasonably Expects It Is Not Being Overheard Or Recorded.

Penal Code section 632 "prohibit[s] unconsented-to eavesdropping or recording of conversations regardless of whether the party expects that the *content of the conversation* may later be conveyed to a third party." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 774-775 (*Flanagan*) (emphasis in original).) Prior to the *Flanagan* decision, the California Courts of Appeal were divided as to whether an expectation that the contents of a conversation may be later conveyed to a third party negated confidentiality. One line of authority held that a conversation was confidential if a party to that conversation had an objectively reasonable expectation that the conversation would not being overheard or recorded. (*Flanagan, supra,* at p. 768, citing *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480 (*Frio*); *Coulter v. Bank of America* (1994) 28 Cal.App.4th 923 (*Coulter*)].)

Under the opposite authority, a conversation would be confidential only if the party had an objectively reasonable expectation that the content would not later be divulged to third parties. (*Flanagan, surpa,* at p. 768, citing *O'Laskey v. Sortino*

Page 10

ARIAS OZZELLO & GIGNAC LLP

1   (1990) 224 Cal.App.3d 241 (*O'Laskey*); also citing *Deteresa v. American*
2   *Broadcasting Companies, Inc.* (9th Cir. 1997) 121 F.3d 460 (*Deteresa*).)   The
3   California Supreme Court adopted the first standard established in *Frio* and
4   *Coulter*.   (*Flanagan, supra,* at p. 768.)

5         The Ninth Circuit had published the opinion in *Detresa, supra,* 121 F.3d 460
6   in 1997, five years before the California Supreme Court's decision in *Flanagan*.
7   The *Detresa* court incorrectly predicted that the California Supreme Court would
8   adopt the *O'Laskey* standard, and not the standard articulated in *Frio* standard.
9   (*Detresa, supra,* 121 F.3d at p. 464.)   This court must now follow the standard
10  adopted by California's high court.

11
12            **3.      Plaintiff's Telephone Calls to TWC Were Confidential.**

13        Plaintiff [and his girlfriend who was present during the call] were "parties"
14  to the February 6, 2010, telephone call when Plaintiff ordered a pay-per-view
15  program.   We are taught that the confidentiality was not destroyed, even in the
16  presence of the girlfriend, by reference to *Lieberman v. KCOP Television, Inc.*
17  (2003) 110 Cal.App.4th 156.   There, two reporters for the television station posed
18  as patients of Dr. Lieberman while performing an undercover investigation.
19  During separate appointments, a companion who was not introduced to Dr.
20  Lieberman, accompanied each of the reporters.    Both companions secretly
21  recorded Dr. Lieberman's consultations with his supposed patients, without his
22  knowledge or consent.   Dr. Lieberman sued for violation of Penal Code section
23  632 under section 632.7.  (*Id.* at 161-162.)

24        The television station did not challenge Dr. Lieberman's assertion that he
25  intended each recorded conversation to be confined to the patient and companion,
26  but argued that the companion was not a party to the communication under the
27  meaning of section 632 because the companion remained silent in both instances.
28  (*Lieberman, supra,* at p. 168.)  The Court of Appeal disagreed:

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

**ARIAS OZZELLO & GIGNAC LLP**

A 'party' to something may be a person who participates in it, or it may be a person who is simply concerned with it. [citation omitted.] 'Overhear' connotes listening without a speaker's knowledge or intent that his speech be heard, as in eavesdropping, which is 'to listen secretly to what is said in private. [citation omitted.] It follows that one who listens with the speaker's knowledge and intent is involved or interested in a conversation, not an eavesdropper.

We must give effect to the plain meaning of the words of a statute. Resort to extrinsic aids to construe a statute is proper only where its words have no clear, plain meaning. [citation omitted]. Appellant refers to the meaning of "party" used in legal proceedings, as set forth in Black's Law Dictionary, but words must be given their ordinary and commonly understood meaning, unless they have a technical meaning and it clearly appears that the Legislature used them in a technical sense. [citation omitted.] We reject appellant's forced definitions. A party to a conversation need not speak, and *overhear* is not synonymous with *hear*. (*Id.* at 168-169.)

The reasoning in *Lieberman* applies here with equal force. Plaintiff's girlfriend was a party to the February 6, 2010, telephone call between Plaintiff and TWC because Plaintiff was ordering a pay-per-view program on her TWC account. And, as were the companions in *Lieberman,* she was listening to the call with Plaintiff's knowledge and consent.

**B.**   <u>**The Class is Ascertainable**</u>

A class definition must be "precise, objective and presently ascertainable." (Manual for Complex Litigation, Fourth (2005), § 21.222, p. 305.) To satisfy this standard, the definition of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." (*Aiken v. Obledo* (E.D.Cal. 1977) 442 F. Supp. 628, 658; *O'Connor v. Boeing North American, Inc.* (C.D.Cal. 1998) 184 F.R.D. 311, 319.)

Page 12

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**ARIAS OZZELLO & GIGNAC LLP**

1   The class definition proposed by Plaintiff in this action satisfy the test of

2   "administrative feasibility" because it sets forth objective criteria that may be used

3   to ascertain membership in the Class. Those objective criteria are:

4   (1)   Did you speak on the telephone with a TWC representative during the

5   relevant time period?

6   (2)   Were you notified that TWC might record your call?

7   (3)   Did TWC record your call?   Affirmative answers to these three

8   questions establish one's membership in the Class.

9   That membership in the Class is easily determined on the basis of these objective

10   criteria makes the Class ascertainable for purposes of certification.

11   Plaintiff's discovery has also confirmed that the failures of TWC's

12   prerecorded messaging system can be easily traced from change orders (CMOs) for

13   the phone switches.  The exact telephone numbers of the calls made, or received,

14   during the impairment or failure can be obtained directly from the "Witness"

15   system.  The customers who called, or who received calls, can then be determined

16   from the TWC's account records.  Plaintiff's expert, Mr. Prunty, has confirmed

17   from the TWC documents, that callers to at least 26 TWC local or toll-free

18   telephone numbers from September 24, 2010 to October 6, 2010 did not receive a

19   recorded message.  The number of TWC telephone numbers and time period(s)

20   probably far exceed those revealed by the documents thus far.  For our purposes

21   here hwoever, this information can be obtained through common documents.  The

22   telephone numbers from which the calls were made can easily be identified

23   through the Verint system, and the callers can be easily ascertained through TWC

24   records.

25   / / /

26   / / /

27   / / /

28

Page 13

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**ARIAS OZZELLO & GIGNAC LLP**

## C.   The Class Satisfies Each of The Statutory Prerequisites For Class Certification Under Rule 23(a)

FED. RULES OF CIV. PROC., RULE 23(a) sets forth four threshold requirements that must be met for class certification:

(1)   The class is so numerous that joinder of all members is impracticable;

(2)   There are questions of law or fact common to the class;

(3)   The claims or defenses of the representative parties are typical of the claims or defenses of the class; and,

(4)   The representative parties will fairly and adequately protect the interests of the class.

While Plaintiff bears the burden of establishing that the proposed class meets the requirements of RULE 23(a), Plaintiff need not prove the merits of his claims "or even establish a probability that the action will be successful." (*Haley v. Medtronic, Inc.* (C.D.Cal. 1996) 169 F.R.D. 643, 647.) As the Ninth Circuit recognizes, "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of RULE 23(a), it is improper to advance a decision on the merits at the class certification stage." (*Moore v. Hughes Helicopters, Inc.* (9th Cir. 1983) 708 F.2d 475, 480, citing *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 177-78 [94 S.Ct. 2140, 40 L.Ed.2d732].) Instead, all factual allegations in Plaintiff's operative FAC are accepted as true for purposes of class certification. (*Arthur Young & Co. v. United States Dist. Court* (9th Cir. 1977) 549 F.2d 686, 688, fn. 3, cert. den. (1977) 434 U.S. 829; *Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 900, fn. 17, cert. den. (1976) 429 U.S. 816.)

/ / /

/ / /

/ / /

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**ARIAS OZZELLO & GIGNAC LLP**

### 1. The Members of The Class Are So Numerous That Joinder Is Impracticable

RULE 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." (*Harris v. Palm Springs Alpine Estates, Inc.* (9th Cir. 1964) 329 F.2d 909, 913-914.) No magic number exists for the number of class members required as a matter of law to satisfy the numerosity requirement. As a general rule, however, classes of forty or more are considered sufficiently numerous. (*Ikonen v. Hartz Mountain Corp.* (S.D.Cal. 1988) 122 F.R.D. 258, 262.)

Plaintiff need not establish the exact number of class members so long as he demonstrates the class will be sufficiently numerous. (*In re Computer Memories Securities Litigation* (N.D.Cal. 1986) 111 F.R.D. 675, 679; *Weinberger v. Thornton* (S.D.Cal. 1986) 114 F.R.D. 599, 602. "[A] reasonable estimate of the number of purported class members satisfies the numerosity requirement of RULE 23(a)(1)"; *In re Badger Mountain Irrigation Dist. Securities Litigation* (W.D.Wash. 1992) 143 F.R.D. 693, 696.)

In this case, numerosity under RULE 23(a)(1) cannot fairly be disputed. TWC has admitted in deposition that it receives "millions of calls." Plaintiff's expert opines that "tens of thousands of callers" received no warning when the 26 identified numbers could not play a prerecorded message during a single 13-day period.

### 2. There Are Questions of Law And Fact Common To The Members of The Class.

RULE 23(a)(2) does not require that all questions be common to the class; a single common question can suffice. (*Haley v. Medtronic, Inc.*, *supra*, 169 F.R.D. at p. 648.) As the Ninth Circuit emphasized in *Hanlon v. Chrysler Corp.* (9th Cir.

Page 15

1998) 150 F.3d 1011, 1019, "RULE 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." (*See also*, *In re Badger Mountain Irrigation Dist. Sec. Litigation*, *supra,* 143 F.R.D. at p. 697.)

In this case, the most obvious and overriding common question of fact is whether TWC notified its callers whether their calls were being recorded.  The question of law common to the Class is whether TWC violated CAL. PENAL CODE § 632, subdivision (a).   This case has the requisite commonality for class certification.

### 3. Plaintiff's Claims Are Typical of The Claims of The Class Members.

A claim is "typical" under RULE 23(a)(3) if it: "(1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims."  (*Haley*, *supra,* 169 F.R.D. at p. 649, citing *Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013, 1018, rehg. en banc den., cert. den. (1993) 506 U.S. 1057.)   The theory behind this two-prong test for typicality was articulated in *In re United Energy Corp., Etc., Securities Litigation* (C.D. Cal. 1988) 122 F.R.D. 251, 256  as follows:

> "A plaintiff's claim is typical of the claims of the proposed class members if it is aligned with the claims of other class members. The plaintiff's claim must arise from the same event or course of conduct giving rise to the claims of other class members. Furthermore, the claims must be based on the same legal theory. (citation omitted.) The theory behind this prerequisite is that a plaintiff with typical claims will pursue her own self-interest and advance the interests of class members accordingly. (citation omitted.)"

Page 16

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**ARIAS OZZELLO & GIGNAC LLP**

1    The claims of Plaintiff do not have to be identical to the claims of the other

2    class members, even though here they certainly are. *Harris, supra,* 329 F.2d at pp.

3    914-915; *Blackie*, *supra,* 524 F.2d at p. 902.)   Rather, "[u]nder the rule's

4    permissive standards, representative claims are 'typical' if they are reasonably

5    coextensive with those of absent class members; they need not be substantially

6    identical."   (*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 957, quoting

7    *Hanlon, supra,* 150 F.3d at p. 1020.)   "[T]he requirement may be satisfied even

8    though varying fact patterns support the claims or defenses of individual class

9    members or there is a disparity in the damages claimed by the representative

10   parties and the members of the class."   (7A Charles A. Wright, Federal Practice

11   and Procedure § 1764, pp. 235-241.)   In other words, "[f]actual variations are not

12   fatal to a proposed class when the claims arise out of the same remedial and legal

13   theory."   (*Sullivan v. Chase Investment Services of Boston, Inc.* (N.D. Cal. 1978)

14   79 F.R.D. 246, 257, quoting *Wofford v. Safeway Stores, Inc.* (N.D.Cal. 1978) 78

15   F.R.D. 460, 488-489.)

16   In this case, Plaintiff's claims—and those of every other Class member—

17   arise from TWC's same uniform practice of recording telephone calls [or a failure

18   of the system to do so] without the callers' consent.   In seeking to remedy TWC's

19   wrongdoing, Plaintiff is asserting identical legal claims against TWC on behalf of

20   himself and the Class members.   As a result, Plaintiff's claims are "reasonably

21   coextensive with those of absent class members" and, thus, typical of the claims of

22   the Class members.

### 4.       Plaintiff Will Adequately Represent The Interests of Each Class Member.

26   A plaintiff is considered "adequate" as a class representative if: "(1) the

27   attorney representing the class is qualified and competent; and (2) the class

28   representatives do not have interests antagonistic to the remainder of the class."

Page 17

ARIAS OZZELLO & GIGNAC LLP

1  (*Haley, supra,* 169 F.R.D. at pp. 649-650, citing *Lerwill v. In-flight Motion*

2  *Pictures, Inc.* (9th Cir. 1978) 582 F.2d 507, 512; *In re Northern Dist. of California*

3  *Dalkon Shield IUD Products Liability Litigation* (9th Cir. 1982) 693 F.2d 847,

4  855, cert. den. (1983) 459 U.S. 1171.)

5      In *Staton, surpa,* 327 F.3d 938, the Ninth Circuit restated the test for

6  adequacy of representation in the form of two questions:  (1)  Do the representative

7  plaintiffs and their counsel have any conflicts of interest with other class members,

8  and (2) will the representative plaintiffs and their counsel prosecute the action

9  vigorously on behalf of the class?  (*Id.* at p. 957; *see also Crawford v. Honig* (9th

10  Cir. 1995) 37 F.3d 485, 487.)  As to conflicts, a class representative must be part of

11  the class and possess the same interest and suffer the same injury as the class

12  members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 [117 S.Ct. 2231,

13  138 L.Ed.2 689] (1997).

14      Both prongs of the test for adequacy of representation are met here.  First,

15  Plaintiff understands his special role as a class representative and the duties that he

16  owes to the Class members. (Calzada Decl., ¶¶ 4, 11.)  Plaintiff's claims do not

17  conflict in any way with the interests of any Class member. (Calzada Decl., ¶ 9.)

18  To the contrary, and as evidenced by the claims alleged in the first amended

19  complaint, Plaintiff's claims are entirely consistent with the claims of the other

20  Class members.

21      Second, there can be no legitimate dispute that Plaintiff's counsel are well-

22  qualified and sufficiently experienced to ensure the vigorous prosecution of this

23  litigation on behalf of the Classes.  Plaintiff's counsel have extensive experience in

24  successfully prosecuting class actions; they are ready, willing and able to commit

25  the resources—both human and financial—that are required to litigate this case

26  vigorously on behalf of the Class; they already have committed significant time

27  and effort to the research, investigation and discovery conducted to date in this

28

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

action; and they will continue to do so as the case progresses (Ozzello Decl.; Greifinger Decl., ¶¶ 5, 6; Goldstein Decl., ¶¶ 5, 6;)

## IV.

## THE CLASS SHOULD ALSO BE CERTIFIED UNDER RULE 23(B)(3)

For certification under RULE 23(b)(3), Plaintiff must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is the superior method for adjudication of the controversy." RULE 23(b)(3) sets forth, as matters pertinent to such a determination:

(1)   The interest of the individual class members in individually controlling the prosecution;

(2)   The extent and nature of any previously commenced class litigation concerning the controversy;

(3)   The desirability of concentrating litigation in the particular forum; and,

(4)   Any difficulties likely to be encountered in management of a class action.

By definition, "predominance" contemplates the existence of some individual issues. Defendants typically point to the need for individual determinations on issues of causation, choice of law and/or affirmative defenses in an attempt to defeat a finding of predominance. However, the existence of some number of individual issues does not defeat predominance so long as the core liability issues can be adjudicated on a class-wide basis. (*Sterling v. Velsicol Chemical Corp.* (6th Cir. 1988) 855 F.2d 1188, 1197.) "It would defy common sense to find that class certification is defeated by the possibility of individual questions appertaining to one of the elements of the case's cause of action." (*In re MDC Holdings Securities Litigation* (S.D.Cal. 1990) 754 F. Supp. 785, 804)

Page 19

ARIAS OZZELLO & GIGNAC LLP

1   For similar reasons, differences among class members concerning the

2   amounts of their individual damages, which are unavoidable in class action

3   litigation, do not prevent a suit from proceeding as a class action. (*Blackie*, *supra,*

4   524 F.2d at p. 905; *Bogosian v. Gulf Oil Co.* (3rd Cir. 1977) 561 F.2d 434, 456,

5   cert den. (1978) 434 U.S. 1086.)

6   **A.      Rule 23(b)(3)(A)**

7

8   The first factor to consider is the interest of each member in "individually

9   controlling the prosecution or defense of separate actions." (FED. RULES OF CIV.

10  PROC., RULE 23(b)(3)(A)

11  Class-wide resolution of the issues in this case will reduce litigation costs

12  and promote efficiency for the court as well as the litigants. As Plaintiff's limited

13  discovery to date has shown, the evidence that relates to TWC's failure to notify

14  customers about recording telephone calls does not vary from one class member to

15  another. Any trier of fact will draw the same conclusions from the same facts in

16  the same manner from one class member to the next. Absent a class action, the

17  trier of fact—be it judge or jury—will hear the same facts regarding TWC's

18  practices, over and over again.

19  Moreover, in this case, the typical claim is far too small for any individual

20  class member to be expected to pursue a separate action. Here, TWC has produced

21  thousands of documents. Plaintiff has had to employ an expert at great expense to

22  prove that TWC, at times, did not notify customers that it was recording the calls.

23  Against this massive undertaking, the statutory recovery is only $5,000, and has no

24  provision for attorneys' fees. In that regard, any suggestion that individual class

25  members have a strong interest in individually controlling the litigation is both

26  unrealistic and contrary to the philosophy of RULE 23. As was pointed out in

27  d*uPont Glore Forgan, Inc. v. American Telephone and Telegraph Co.* (S.D.N.Y.

28  1975) 69 F.R.D. 481, a case in which one of the class representatives had a claim

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

*ARIAS OZZELLO & GIGNAC LLP*

of $130,000 (an amount far in excess of the anticipated individual claims in this action):

> "[T]he time-cost factor of legal fees in view of the vigor of defendants' opposition make it uneconomical to proceed with the suit on an individual basis even assuming an ultimate recovery – in fact, Monsanto would, if required to proceed on an individual basis, forego its claim ... Thus, the assertion that this action will not go forward at all if class action status is denied is plausible. The hard fact is that economic reality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation."

(*Id.* at p. 487.)

In the absence of class certification in this action, it is virtually certain that none of the other class members' individual claims will go forward, and none of the myriad illegal recordings by TWC will be addressed, much less resolved. "Where it is not economically feasible to obtain relief [in separate suits] . . . , aggrieved persons may be without effective redress unless they may employ the class-action device."  (*Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 63 L.Ed.2d 427].)  Considering the expenses that would be involved in procuring individual evidence and expert testimony on behalf of each class member, the pursuit of individual claims in this case is simply not economical.  As the United States Supreme Court has noted, "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."'".  (*Amchem*, *supra*, 521 U.S. at p. 617, quoting *Mace v. Van Ru Credit Corp.* (7th Cir. 1997) 109 F.3d 338, 344.)

/ / /

/ / /

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**ARIAS OZZELLO & GIGNAC LLP**

**B.    RULE 23(b)(3)(B)**

The second factor to consider is "the extent and nature of any litigation concerning the controversy already commenced or against members of the class." (FED. RULES OF CIV. PROC., RULE 23(b)(3)(B).)

Plaintiff is not aware of any previously commenced class litigation concerning the practices at issue in this action.

**C.    RULE 23(b)(3)(C)**

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." (FED. RULES OF CIV. PROC., RULE 23(b)(3)(C); *see also*, *Haley, supra*, 169 F.R.D. at p. 653.) The Class in this case is limited to California residents whose calls were recorded by TWC. The Class Representative resides in the Central District. Counsel for both parties are located in the Central District. A large number of TWC's customers reside in the Central District. This Court is a desirable forum for litigating the claims in this case.

**D.    RULE 23(b)(3)(D)**

The fourth factor to consider is "the difficulties likely to be encountered in the management of a class action." FED. RULES OF CIV. PROC., RULE 23(b)(3)(D).

Plaintiff foresees no management difficulties that will preclude the claims in this action from being adjudicated on a class-wide basis. In any event, possible management problems are not, standing alone, a proper ground for denying class certification. As the district court explained in *In re Sugar Industry Antitrust Litigation* (E.D.Pa. 1976) 73 F.R.D. 322, 358:

> "The federal bench and bar must remain cognizant of the fact that difficulties in the management of class actions should not lead to a conclusion that class actions are not superior to other available means for the fair and efficient adjudication of the controversy.

Page 22

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

*Manageability problems are significant only if they create a situation that is less fair and efficient than other available techniques* (citation omitted.) This perspective is important in this litigation because defendants, after reciting potential manageability hassles, offer no other remedy that is better than this purportedly imperfect one" (emphasis added.)

Management problems do not exist here.  Ascertainment and notification of class members will be through uniform methods, based on the single uniform claim.  A single state statute applies.  (*Cf. Haley*, *supra,* 169 F.R.D. at p. 656 (although common issues predominated and all other RULE 23(a) prerequisites had been met, a class action was not the superior method of resolving the litigation where the laws of fifty states had to be applied).)

In sum, the class action device is superior because there simply are no practical or economic alternative procedures available to the parties that might be used to adjudicate the claims for relief asserted in this action in a more fair and/or more efficient manner.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 23

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

ARIAS OZZELLO & GIGNAC LLP

V.

CONCLUSION

This case meets all of the procedural requirements for class certification. Plaintiff respectfully requests that the Court grant his motion for class certification and enter an order in the form proposed.

Dated: November 18, 2011                    ARIAS OZZELLO & GIGNAC LLP

By: */s/ Mark A. Ozzello*

MIKE ARIAS
MARK A. OZZELLO

David R. Greifinger
LAW OFFICES OF DAVID R. GREIFINGER

Howard A. Goldstein
LAW OFFICES OF HOWARD A. GOLDSTEIN

Attorneys for Plaintiffs

ARIAS OZZELLO & GIGNAC LLP

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**