BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
RACHEL J. FELDMAN (SBN 246394)
rfeldman@whitecase.com
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone:  (213) 620-7700
Facsimile:   (213) 452-2329

Attorneys for Defendant
TIME WARNER CABLE LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CALZADA,<br><br>    Plaintiff,<br><br>    v.<br><br>TIME WARNER CABLE LLC, a<br>Delaware Corporation,<br><br>    Defendant. | No.  CV 11-01701-DMG(JCGx)<br><br>DEFENDANT TIME WARNER CABLE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>[Request for Judicial Notice; Evidentiary Objections to Declaration of Martin Prunty; Evidentiary Objections to Declaration of Miguel Calzada; Appendix of Exhibits; and Declarations of Geovanni Herrera, Heather Kraska, Rob Lowe, Bryan A. Merryman, Susan Otto, Sagi Shimonovitz, David Su, and Lauri Thompson filed concurrently herewith]<br><br>Date:      January 6, 2012<br>Time:      2:00 p.m.<br>Crtrm:    7 (Hon. Dolly M. Gee) |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 2

      A.    Plaintiff Epitomizes The Problems With His Proposed
            Class ............................................................................................... 2

      B.    TWC's Policy Is To Provide Notice To Every Caller ........................... 4

            1.    Callers To The West IVR Receive Notice That the
                  Call May Be Recorded In the Switch Before
                  Connecting To An Agent ..................................................... 5

            2.    Callers To The Corporate IVR Receive Notice That
                  The Call May Be Recorded In The IVR At The
                  Outset Of The Call ............................................................. 6

      C.    TWC Does Not Record 100% Of Incoming Calls................................ 6

      D.    TWC's Policy Is To Provide Notice That Calls From
            TWC May Be Monitored Or Recorded .................................... 7

      E.    Plaintiff Received Two Notices On February 6, 2010 ......................... 7

      F.    TWC Experienced A Brief Glitch For A Small Number
            Of VDNs .............................................................................. 8

      G.    Subscribers Have Agreed To Arbitrate Claims
            Individually .......................................................................... 9

III.  THE COURT SHOULD DENY CERTIFICATION .................................... 11

      A.    Plaintiff Lacks Standing.................................................. 11

      B.    Plaintiff's Proposed Class Is Overbroad .............................. 14

            1.    Plaintiff's Proposed Class Includes Individuals
                  Who Had No Reasonable Expectation Of
                  Confidentiality ................................................... 14

            2.    Plaintiff's Proposed Class Includes Individuals
                  Who Agreed To Arbitrate Their Claims.................... 14

      C.    Plaintiff Has Not Defined An Ascertainable Class............. 15

            1.    Plaintiff's Proposed "Objective Criteria"
                  Demonstrate  Why His Proposed Class Is Not
                  Ascertainable .................................................. 15

i

2. The Court Cannot Ascertain Who Had A Reasonable Expectation Of Confidentiality Without Asking Each Caller ................................ 18

3. TWC Has No Way to Identify Plaintiff as a Caller.................. 19

4. Plaintiff Offers No Way To Ascertain Proposed Class Members That Received Calls From TWC .................... 19

D. Plaintiff Has Not Met His Burden Of Proof Under Rule 23(a) .......................................................................... 20

1. Plaintiff Has Not Presented Evidence Of Numerosity ................................................................. 20

2. Plaintiff's Claims Are Not Typical........................... 21

3. Plaintiff Has Not Satisfied The Commonality Requirement........................................................... 21

4. Plaintiff Is Not An Adequate Class Representative ................. 22

E. Plaintiff Has Not Met His Burden Of Proof Under Rule 23(b) .......................................................................... 23

1. Individual Fact Issues Preclude Certification........................... 24

2. A Class Action Is Not Superior ................................. 24

IV. CONCLUSION ............................................................ 25

LOSANGELES 934242 (2K)

1

## TABLE OF AUTHORITIES

2

3

**Page(s)**

4

## FEDERAL CASES

5

6
*Alaska v. Suburban Propane Gas Corp.*,
  123 F.3d 1317 (9th Cir. 1997)................................................................21

7
*AT&T Mobility LLC v. Concepcion*,
  131 S.Ct. 1740 (2011) ................................................................14, 15
8

9
*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007)................................................................11

10
*Berger v. Compaq Comp. Corp.*,
  257 F.3d 475 (5th Cir. 2001)................................................................23

11

12
*Berndt v. Cal. Dep't of Corrections*,
  2010 WL 2035325 (N.D. Cal. May 19, 2010)................................................16

13
*Clark v. State Farm Mut. Auto. Ins. Co.*,
  231 F.R.D. 405 (C.D. Cal. 2005) ................................................................22

14

15
*Deitz v. Comcast Corp.*,
  2007 WL 2015440 (N.D. Cal. July 11, 2007)................................15, 16, 18

16
*Doe v. Unocal Corp.*,
  67 F. Supp. 2d 1140 (C.D. Cal. 1999)................................................................11

17

18
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................23

19
*Elk Grove Answering Serv. V. Hoggatt*,
  2010 WL 4723720 (E.D. Cal. Nov. 15, 2010)................................12, 13

20

21
*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)................................................................passim

22
*Faulkner v. ADT Sec. Servs., Inc.*,
  2011 WL 1812744 (N.D. Cal. May 12, 2011)................................13, 14, 18, 19

23

24
*Fine v. Conagra Foods, Inc.*,
  2010 WL 3632469 (C.D. Cal. Aug. 26, 2010)................................................................22

25
*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ................................................................11

26

27
*Hodgers-Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999) (en banc)................................................................11

28

- iii -

LOSANGELES 934242 (2K)

*Johnson v. Hewlett-Packard Co.*,
    2011 WL 3566605 (N.D. Cal. Aug. 12, 2011) .................................................. 12

*Kera v. Siemens Corp.*,
    393 F.3d 120 (2d Cir. 2004) ............................................................................ 18

*Legge v. Nextel Commc'ns., Inc.*,
    2004 WL 5235587 (C.D. Cal. June 25, 2004) ................................................ 24

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ......................................................................... 11

*Mazur v. eBay, Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ............................................................. 14, 15

*O'Connor v. Boeing N. Am., Inc.*,
    180 F.R.D. 359 (C.D. Cal. 1997) .................................................................... 20

*In re Phenylpropanolamine (PPA) Prods. Liabl. Litig.*,
    214 F.R.D. 614 (W.D. Wash. 2003) ................................................................ 17

*Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*,
    136 F.R.D. 658 (D. Ore. 1991) ....................................................................... 23

*Schwartz v. Upper Deck Co.*,
    183 F.R.D. 672 (S.D. Cal. 1999) ..................................................................... 20

*Seig v. Yard House Rancho Cucamonga, LLC*,
    2007 WL 6894503 (C.D. Cal. Dec. 10, 2007) ................................................ 25

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ......................................................................... 21

*Stuart v. Radioshack Corp.*,
    2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ..................................................... 23

*In re Teflon Prods. Liab. Litig.*,
    254 F.R.D. 354 (S.D. Iowa 2008), *petition for appeal denied* (8th Cir.
    2009) ................................................................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ............................................................... 18, 20, 21, 22

*Williams v. Veolia Transp. Servs., Inc.*,
    2010 WL 1936270 (9th Cir. May 14, 2010) .................................................... 22

*Zinser v. Accufix Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................. 11, 24

- iv -

LOSANGELES 934242 (2K)

## **STATE CASES**

*Flanagan v. Flanagan,*
    27 Cal. 4th 766 (2002) ............................................................... 13

*Kearney v. Salomon Smith Barney, Inc.,*
    39 Cal. 4th 95 (2006) ................................................................. 13

*Roth v. Dep't of Veterans Affairs,*
    110 Cal. App. 3d 622 (1980) ..................................................... 23

## **DOCKETED CASES**

*Hopkins v. Healthmarkets, Inc.,*
    No. BC404133 (Cal. Nov. 11, 2011) (order denying class certification) .............
    ........................................................................................... 17, 19, 20

## **FEDERAL STATUTES**

9 U.S.C. § 2 .................................................................................... 14

## **FEDERAL RULES**

Fed. R. Civ. P. 23 ........................................................................... 20

Fed. R. Civ. P. 23 ..................................................................... passim

Fed. R. Civ. P. 23(a) ...................................................................... 20

Fed. R. Civ. P. 23(a)(2) .................................................................. 21

Fed. R. Civ. P. 23(b) ...................................................................... 24

Fed. R. Civ. P. 23(b)(3) .................................................................. 24

## **STATE STATUTES**

Cal. Pen. Code § 632(a) ................................................................. 11

Cal. Pen. Code § 637.2 ................................................................... 25

## I.    INTRODUCTION

Plaintiff Miguel Calzada seeks to certify a class of California residents whose telephone calls to or from defendant Time Warner Cable LLC ("TWC") were recorded without notice that the calls were being recorded, from January 27, 2010, to the present (the "Class Period").  Despite extensive discovery, Plaintiff has not identified a single member of his proposed class (including himself), much less offered this Court a way to identify proposed class members on a classwide basis.

The Court must conduct a "rigorous analysis" to determine whether Plaintiff has established, by a preponderance of the evidence, each implicit and express requirement of Federal Rule of Civil Procedure 23.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  Plaintiff has not met his burden.  Indeed, the Court must only review Plaintiff's declaration to conclude certification of his proposed class is inappropriate.  Plaintiff is not a TWC subscriber.  He bases his claim on a call he made to TWC on February 6, 2010, mostly likely from his girlfriend's telephone, to order programming on her account.  TWC has no way to identify Plaintiff as the caller, and there is no way to identify specific callers (such as Plaintiff) on a classwide basis.

It is also not feasible to ask millions of California residents whether they spoke to a TWC agent during the Class Period and were recorded without notice. Plaintiff exemplifies why it is impossible to rely on individual memories.  First, Plaintiff, and every other person who called or received a call from TWC, has no way to know whether his call was recorded.  Second, while Plaintiff does not recall receiving notice, the only reliable evidence shows that, on February 6, 2010, he received notice that the call may be monitored or recorded *twice* and there is only a 10% chance Plaintiff's call was even recorded.

Plaintiff also cannot overcome the individual factual inquiries necessary to determine who, if anyone, had a reasonable expectation that his or her call with

1   TWC would be confidential.  Over 95% of callers during the Class Period contacted

2   TWC to report a service problem, discuss a bill, or order or change service.  Based

3   on the nature of these calls, callers could not have objectively had a reasonable

4   expectation their communications would be confidential.  Finally, the Court would

5   need to determine on an individual basis whether each caller has agreed to TWC's

6   arbitration and class action waiver provision.

7        Plaintiff's First Amended Complaint only alleged TWC recorded calls *from*

8   California residents.  Now, in his motion, Plaintiff seeks to expand his proposed

9   class to also include calls TWC made to California residents.  Plaintiff seeks this

10  major expansion without claiming he received a call from TWC (recorded or not,

11  with notice or not) and without any evidence that TWC failed to provide notice to

12  recipients of outgoing calls that their calls may be recorded.  Plaintiff's sole

13  justification for this expansion is his expert's speculation that TWC may not have

14  given notice because providing notice on outgoing calls is difficult.

15       The suggestion by Plaintiff's expert that the Court take a "sampling of

16  outgoing call recordings" to determine whether TWC gave notice that such calls

17  may be recorded ignores Plaintiff's burden on class certification.  In fact, Plaintiff

18  admits that the only way to determine specifically who received a call from TWC

19  and had a call recorded without notice would be to have an evidentiary hearing to

20  review the call recordings for every single outgoing call.  Such review would likely

21  take thousands of hours, if not more.

22       For these reasons, and the many other reasons discussed below, Plaintiff's

23  proposed class does not meet the requirements of Rule 23 and cannot be certified.

24  **II.   STATEMENT OF FACTS**

25       **A.   Plaintiff Epitomizes The Problems With His Proposed Class**

26       Plaintiff has called TWC between ten to fifteen times.  Declaration of Bryan

27  A. Merryman ("Merryman Decl."), ¶ 2(d), Ex. Q.  There is no evidence he

28  terminated any of those calls upon hearing it would be recorded because he felt the

- 2 -

1    communication was confidential.  Plaintiff points to two calls where he does not

2    recall hearing the notification -- a call on May 27, 2009, before the Class Period,

3    and a call on February 6, 2010, during the Class Period.  Both times, he contacted

4    TWC using someone else's phone number to discuss someone else's account.  *Id.*,

5    ¶¶ 2(e), (k), (l), (n).  He does not know whether those two calls were actually

6    recorded, and at the time of those calls, he did not care.  *Id.*, ¶¶ 2(i), (m), (p).

7         Plaintiff contends he called TWC on May 27, 2009, from his brother's phone

8    to discuss a billing issue regarding his brother's account.  *Id.*, ¶ 2(k).  Plaintiff

9    cannot recall whether he heard any advertisements while on hold, but he is certain

10    he did not hear a pre-recorded notice that his call may be monitored or recorded.

11    *Id.*, ¶ 2(l).  During the call, the agent informed him that TWC records all calls and

12    that a previous call between his brother and TWC was recorded.[1]  *Id.*, ¶ 2(j).

13         Plaintiff next claims he called TWC on February 6, 2010, either from his or

14    his girlfriend's phone, to order a pay-per-view program on his girlfriend's account.

15    *Id.*, ¶ 2(n).  Plaintiff recalls hearing advertisements while on hold, but cannot recall

16    their content.  *Id.*, ¶ 2(o).  He also does not recall the specific content of his

17    conversation with the customer service agent.  *Id.*, ¶ 2(q).  He recalls, however,

18    that he did not receive notice his call may be recorded.  *Id.*, ¶ 2(n).  Plaintiff does

19    not know whether his February 6 call was recorded and did not care at the time

20    whether it was recorded.  *Id.*, ¶¶ 2(m), (p).  (As discussed in section II.E below,

21    Plaintiff <u>did</u> receive such notice and the likelihood it was recorded is no greater

22    than 10%.)

23         Plaintiff does not know whether he considered his calls to TWC, about

24    someone else's account, confidential.  Merryman Decl., ¶ 2(t), Ex. Q.  He also does

25

26    _____

[1] After testifying that TWC's agent told him that TWC records all calls, Plaintiff
later testified that the agent told him that his brother's recent call was recorded and
their call was being recorded.  Merryman Decl., ¶¶ 2(i), (j), Ex. Q.  The TWC
agent's alleged statement was not accurate because, as discussed below, TWC does
not record all calls.  However, it is admissible to show Plaintiff's state of mind.

- 3 -

1  not know of another person, except allegedly his brother, who contacted TWC and
2  did not receive notice that the call may be monitored or recorded.  *Id.*, ¶ 2(g).

3       Plaintiff, who has served as the sole proposed representative of this class
4  since filing the First Amended Complaint in April 2011, is unwilling to fulfill his
5  obligations as a class representative.  He does not even know he is the only
6  remaining plaintiff in this case.  *Id.*, ¶ 2(c).  He is not prepared to be responsible for
7  a single dollar of costs if ordered by the Court.  *Id.*, ¶ 2(h).  He knows nothing about
8  his proposed class or this litigation, and relies entirely on his counsel to determine
9  litigation strategy.  *Id.*, ¶ 2(c).

10       **B.    TWC's Policy Is To Provide Notice To Every Caller**

11       TWC receives more than 1.5 million calls from subscribers in the West
12  Region to its customer service centers every month.  Declaration of Sagi
13  Shimonovitz ("Shimonovitz Decl."), ¶ 5, Ex. J.  Approximately 45% of these calls
14  are subscribers reporting service and repair issues.  *Id.*, ¶¶ 5, 6, Ex. J.  Over 35% of
15  these calls involve billing questions, and approximately 10% involve calls to order
16  or inquire about new service.  *Id.*  Of the remaining calls, over 6% are retention
17  calls, and less than 1% relate to debt collection or other issues.  *Id.*  To efficiently
18  handle this large volume of calls, TWC employs an experienced staff of telecom
19  and information technology experts, both locally and nationally, and utilizes a
20  sophisticated network of call center technologies.  *Id.*, ¶ 7.  The easiest way to
21  understand the various technologies is to follow a call through the system.

22       California callers initiate contact with TWC by dialing one of many local or
23  toll-free numbers used by TWC.  Shimonovitz Decl., ¶ 9.  Each local or toll-free
24  number delivers the call to either the local West Region interactive voice response
25  system ("West IVR") or the national corporate enterprise interactive voice response
26  system ("Corporate IVR").  *Id.*  An IVR is an automated voice response system that
27  serves several functions, such as identifying a caller's account information,
28  answering a caller's inquiries, and, if necessary, routing the call to the appropriate

- 4 -

call center.  *Id.*, ¶ 9.  The path a call will take varies depending on whether it routes to the West IVR or the Corporate IVR.

> **1.      Callers To The West IVR Receive Notice That the Call May Be Recorded In the Switch Before Connecting To An Agent**

The West IVR allows the caller to resolve certain inquiries, such as basic repair problems or account balance/payment information.  Shimonovitz Decl., ¶ 10. Through this process, the West IVR gathers information concerning the call and determines the call-type, including the language preference (English or Spanish) and inquiry (*i.e.*, repairs, billing, sales, retention, etc.).  *Id., ¶* 11.

If an inquiry cannot be resolved in the West IVR, the West IVR releases the call to TWC's West Region phone switch, run by Avaya technology ("West Switch").  *Id.*  Within the West Switch are 7,000 vector directory numbers ("VDN")[2] that route callers to various locations.  *Id.*, ¶ 12.  The West IVR releases the call to a VDN in the West Switch associated with the identified call-type.  *Id., ¶¶* 11-12.  Through "vector programming," the call is taken through a variety of steps.  *Id., ¶* 13.  One of these steps is to play a pre-recorded message to the caller notifying him or her that the call may be monitored or recorded.  *Id.*

The automated notice created by TWC and programmed into the vector states: "Thank you for calling Time Warner Cable.  To assure quality service, this call may be monitored or recorded by supervisory personnel."  *Id.*, ¶ 14.  The West Switch is programmed to play this notice before the call is pointed to a call agent at either an in-house or vendor call center.  *Id.*, ¶ 15.

There is only one exception to this routing and automated notice procedure. *Id.*, ¶ 16.  If a caller selects options in the West IVR which indicate the call is about a high-speed internet, e-mail, or telephone troubleshooting issue, a VDN points the caller to TWC's National Help Desk ("NHD") run by one of TWC's vendors,

---

[2] VDNs, in layman terms, are "virtual phone numbers"— they point calls to other locations within the West Switch but, unlike an actual telephone, have no physical equipment or location.  *Id.*, ¶ 12.

TWC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Convergys Corporation ("Convergys") or 24x7 Customer, Inc. ("24x7").  *Id.*  NHD calls are transferred to the vendor's switch before the pre-recorded notice is played because each NHD vendor has programmed its switch to play the message:  "Thank you for calling the Road Runner National Help Desk.  Your call may be monitored or recorded for quality assurance."  As with the West Switch, the vendors' switches are programmed so that they do not allow a caller to be connected to a live agent before playing the automated message.  *Id.*

**2.     Callers To The Corporate IVR Receive Notice That The Call May Be Recorded In The IVR At The Outset Of The Call**

The Corporate IVR receives calls from callers who dial one of the national TWC telephone numbers (for example, 800-TWCABLE and 866-TWCABLE), or calls that land in a region TWC has migrated to the corporate platform.  Declaration of Rob Lowe ("Lowe Decl."), ¶ 5.  Unlike the West IVR, the Corporate IVR greets each caller, immediately upon connection, with the message: "Welcome to Time Warner Cable.  This call may be monitored or recorded."  *Id.*, ¶ 6.  The Corporate IVR plays this message before allowing the caller to select any further options.  *Id.*  Because this pre-recorded message is part of the IVR itself, a caller cannot proceed through the Corporate IVR without hearing the initial greeting notifying the caller that the call may be recorded.  *Id.*

**C.     TWC Does Not Record 100% Of Incoming Calls**

After the call exits either the West IVR or the Corporate IVR, and the pre-recorded notice has played, a VDN points the call to either an internal TWC service agent or to one of TWC's three call center vendors – Convergys, 24x7, or TeleTech Holdings, Inc. ("TeleTech").  Shimonovitz Decl., ¶¶ 7, 15.  TWC handles about 60% of its calls internally and attempts to record 100% of these calls.  *Id.*, ¶¶ 7, 18.  Because of the volume of calls and the nature of the recording technology, there are often errors that result in calls not being recorded.  *Id.*, ¶ 18, Ex. K.  During the Class Period, there were dozens of periods during which TWC did not record calls.

TWC'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

*Id*. On average, TWC requires its vendors, by contract, to record 10% of incoming calls. *Id.*, ¶ 19, Exs. L, M, N. A caller does not know whether he or she is speaking to an agent at a call center run by TWC or one of its vendors, or whether the call is being monitored or recorded. *Id*., ¶ 20.

### D.   TWC's Policy Is To Provide Notice That Calls From TWC May Be Monitored Or Recorded

Not all of TWC's outgoing calls are monitored or recorded. Regardless, TWC's policy is to provide notice that calls may be monitored or recorded when it makes outgoing calls. Declaration of Susan Otto ("Otto Decl."), ¶¶ 3-5. TWC's agents are instructed to provide such notice at the outset of a call. *Id*. Plaintiff has presented no evidence whatsoever to the contrary and does not identify a single individual who received a recorded call from TWC and did not receive notice the call may be recorded.

### E.   Plaintiff Received Two Notices On February 6, 2010

Plaintiff claims that he called TWC on February 6, 2010, from either the telephone number (818)968-4268 or (818)625-8314, and that he spoke with an agent and his call was recorded even though he did not receive notice that his call may be recorded. Declaration of Miguel Calzada [Dkt. 20-1] ("Calzada Decl."), ¶¶ 20-21. TWC has searched its records and found two calls from (818)625-8314 on February 6.[3] Plaintiff received notice that day that his conversations with TWC may be monitored or recorded — twice. Lowe Decl., ¶ 15, Exs. C, D, E, F.

Both of these calls were directed to TWC's Corporate IVR. *Id*., ¶¶ 9, 12, Exs. D, F. The first call occurred at 11:44 a.m. and lasted 81 seconds. *Id*. During the first few seconds of the call, a pre-recorded message in the Corporate IVR said, "Welcome to Time Warner Cable. This call may be monitored or recorded." *Id*., ¶¶ 6, 9. This message played before allowing Plaintiff to choose any option. Plaintiff terminated the call while it was in the Corporate IVR, and was not

---

[3] TWC has no records of a call from (818)968-4268 on February 6, 2010.

- 7 -

1   connected to a live agent.  *Id.*, ¶ 11.  Six seconds later, TWC received a second call

2   from the number (818)625-8314.  *Id.*, ¶ 12, Ex. F.  The second call was also

3   directed to the Corporate IVR.  *Id.*  Again, immediately upon connection, the caller

4   received the message, "Welcome to Time Warner Cable.  This call may be

5   monitored or recorded."  *Id.*, ¶¶ 6, 12.  During the second call, the caller proceeded

6   through the Corporate IVR and was ultimately routed to TWC's vendor, 24x7.  *Id.*,

7   ¶ 13, Ex. F.  There is no way to determine whether or not this call was one of the

8   10% of calls recorded by 24x7.  *Id.*, ¶ 14.

9           **F.     TWC Experienced A Brief Glitch For A Small Number Of VDNs**

10          Through discovery, Plaintiff identified one programming error that impacted

11   the pre-recorded notice on a small number of VDNs relating to TWC's San Diego

12   callers for a three-day period.[4]  Declaration of Geovanni Herrera ("Herrera Decl."),

13   ¶ 7, Ex. P.  Plaintiff was not impacted by the error relating to these VDNs, as he

14   called from a Los Angeles area number about a L.A. area account in February 2010.

15          The total number of San Diego VDNs impacted by this inadvertent error was

16   26 (approximately 1/3 of 1% of the total number of VDNs handling calls from

17   California residents).  TWC promptly recognized this problem and fixed it.  *Id.*,

18   ¶¶ 10-11, Ex. P.  The three days this small number of VDNs did not provide the

19   pre-recorded notice equals less than 1% of the total Class Period.

20          Importantly, contrary to the speculation of Plaintiff's expert, simply because

21   a caller was pointed to one of the 26 impacted VDNs does not mean he or she spoke

22   to an agent and the call was recorded without receiving the automated notice.  *Id.*, ¶

23   14.  This is true for several reasons.  First, the caller may have hung up before

24   speaking to an agent.  *Id.*  Second, the caller may have been directed to the NHD

25   ---

[4] Plaintiff contends, with no evidence, there was at least a 13-day period in which
26   calls to 26 local and/or toll-free numbers did not receive notice that the calls may be
     recorded.  Motion at 26.  This is demonstrably false.  The actual evidence shows
27   that on September 21, 2010, in the process of implementing a large scale project to
     restructure the West IVR, TWC uploaded a programming script that contained an
     inadvertent error.  Herrera Decl., ¶¶ 9-10, Ex. P.  In testing the changes, TWC
28   located the error on September 24, 2010, and fixed it that day.  *Id.*, ¶¶ 10-11.

- 8 -

and received notice through the vendor.  *Id.*  Third, callers are pointed to numerous VDNs during any given call, and these callers may have received notice from another VDN.  *Id.*  Fourth, Witness (the system by which TWC records calls) may not have been recording calls at the time.  *Id.*  Fifth, the caller may have been directed to a vendor that records only 10% of calls.  *Id.*  There is no method to determine on a classwide basis whether a call during that three-day period did not receive the notice, was handled by an agent, and was recorded (if that could be determined at all).  *Id.*, ¶ 15.  Moreover, there is no way to identify who specifically made each call without asking every person who had access to a number from which a call was initiated and then inquiring as to each caller's reasonable expectation of confidentiality.  *Id.*

### G.   Subscribers Have Agreed To Arbitrate Claims Individually

In exchange for receiving services from TWC, each subscriber agrees to the terms of the Residential Services Subscriber Agreement ("Subscriber Agreement"), which governs the relationship between TWC and its subscribers.  Declaration of David Su ("Su Decl."), ¶ 5, Ex. G.  Unless he or she opts out, each TWC subscriber in California receives the Subscriber Agreement, and agrees to arbitrate claims and waives any rights to bring claims on behalf of a class, when he or she first signs up for service, and subsequently confirms his or her agreement to the terms in the Subscriber Agreement, including the agreement to arbitrate claims and the class waiver, each time the subscriber signs a work order.  *Id.*, ¶ 7.

The first page of the Subscriber Agreement includes a shaded box containing red text in all capital letters that provides:

> THIS AGREEMENT CONTAINS A BINDING "ARBITRATION CLAUSE," WHICH SAYS THAT YOU AND TWC AGREE TO RESOLVE CERTAIN DISPUTES THOUGH ARBITRATION.  YOU HAVE THE RIGHT TO OPT OUT OF THIS PART OF THE AGREEMENT.  SEE SECTION 15.

Su Decl., ¶ 5, Ex. G (Sub. Agrmt. at 1).

Section 15 of the Subscriber Agreement, titled "Unless you Opt Out, You are

- 9 -

Agreeing to Resolve Certain Disputes Through Arbitration," provides in part:

(a) Our goal is to resolve Disputes fairly and quickly. However, if we cannot resolve a Dispute with you, then, except as described elsewhere in Section 15, each of us agrees to submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution. As an alternative, you may bring your claim in your local "small claims" court, if its rules permit it. . . .

(b) You may bring claims only on your own behalf, and not on behalf of any official or other person, or any class of people. Only claims for money damages may be submitted to arbitration; claims for injunctive orders or similar relief must be brought in a court. You may not combine a claim that is subject to arbitration under this Agreement with a claim that is not eligible for arbitration under this Agreement. The arbitrator will decide whether a dispute can be arbitrated. . . .

(e) You may opt out of this agreement's arbitration provision. If you do so, neither you nor TWC can require the other to participate in an arbitration proceeding. To opt out, you must notify TWC in writing within 30 days of the date that you first became subject to this arbitration provision.

Su Decl., ¶ 7, Ex. G (§ 15). Section 15 explains how to opt out of the Subscriber Agreement's arbitration provision. *Id.*

Except for those who opted out, all new subscribers since April 2010, and those who have signed a work order since November 2010, agreed to arbitrate their claims and to the class waiver. Su Decl., ¶¶ 6, 8, 13. In addition, TWC notified its existing California subscribers of the arbitration provision, the class waiver, and their ability to opt out at various times beginning in March of 2010. Su Decl., ¶¶ 9-12, Exs. H, I; Declaration of Lauri Thompson ("Thompson Decl."), ¶¶ 3-6, Ex. B; Declaration of Heather Kraska ("Kraska Decl."), ¶ 5, Ex. A. TWC included a "statement message" in the April 2010 billing statements that informed subscribers:

You have a new Time Warner Cable subscriber agreement which contains an arbitration clause and other important terms. You can review the new agreement and, if you wish, opt out of the arbitration clause at http://help.twcable.cim/html/policies.html.

*Id.* All subscribers in San Diego, Barstow, and the Desert Cities received this notification on their April 2010 billing statements. Thompson Decl., ¶¶ 3-6, Ex. B;

- 10 -

TWC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Kraska Decl., ¶ 5, Ex. A.  The majority of subscribers in the Greater Los Angeles Area received this notice in March 2010 and the rest received it in April 2011.  *Id.*; Su Decl., ¶¶ 9-12, Exs. H, I.

## III.   THE COURT SHOULD DENY CERTIFICATION

A party seeking certification has the burden of demonstrating with evidence, not just alleging, it satisfied each requirement of Rule 23.  *Zinser v. Accufix Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Courts must conduct a "rigorous analysis" to determine whether class certification is proper.  *Gen. Tel. Co.*, 457 U.S. at 161.  Not only must the Court make specific "findings" that Plaintiff met each requirement, its findings must be supported by a preponderance of the evidence. *Ellis*, 657 F.3d at 980.

### A.   <u>Plaintiff Lacks Standing</u>

If a representative plaintiff lacks standing, the court need not reach class certification.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).  A plaintiff seeking to represent a class must establish his own standing. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  If he fails to do so, "'he may not seek relief on behalf of himself or any other member of the class.'"  *Doe v. Unocal Corp.*, 67 F. Supp. 2d 1140, 1142 (C.D. Cal. 1999) (quoting *Nelson v. King Cnty.*, 895 F.2d 1248, 1249-50 (9th Cir. 1990)); *see also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc).

California Penal Code section 632(a) prohibits persons from intentionally recording a confidential communication by means of an electronic recording device without the consent of all parties.  "The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in … any [] circumstances in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."  *Id.*  Plaintiff lacks standing to assert a claim under section

- 11 -

632 because the only reliable evidence shows TWC did not record a confidential communication with Plaintiff without notice.

First, as a matter of law, Plaintiff cannot sustain his burden of establishing his call to TWC on February 6 was recorded.  Merryman Decl., ¶ 2(p), Ex. Q.  As there is only a 10% chance his call was recorded, Plaintiff would not be allowed to have a jury determine whether it is more likely than not his call was recorded.

Second, Plaintiff's only evidence that he did not receive notice that his call may be recorded is his incorrect recollection.  *Id.*, ¶ 2(n).  But, reliance on Plaintiff's memory cannot establish standing.  *See Johnson v. Hewlett-Packard Co.*, 2011 WL 3566605, at *10 (N.D. Cal. Aug. 12, 2011) (plaintiff's only evidence to support his claim, based on his memory and recollection, was insufficient to create a triable issue of fact).  The only reliable evidence shows that Plaintiff placed two calls to TWC, within six seconds of each other, from his girlfriend's number on February 6, 2010.  Lowe Decl., ¶¶ 8-12, Ex. C.  Both calls were delivered to the Corporate IVR, which played a pre-recorded message notifying Plaintiff his call may be monitored or recorded during the first few seconds of both calls, before he could have selected any option.  *Id.*, ¶¶ 6, 9, 12.  Moreover, while Plaintiff admits TWC has technology in place that, when properly programmed, provides notice to callers that their calls may be recorded (Motion at 4), Plaintiff has presented no evidence of any error or malfunction in this technology on February 6, 2010, that would have resulted in Plaintiff not receiving notice that his calls may be recorded.

Third, because Plaintiff received notice each call was being recorded, he could have no reasonable expectation of confidentiality.  *Elk Grove Answering Serv. V. Hoggatt*,  2010 WL 4723720, at *2 (E.D. Cal. Nov. 15, 2010).  Not only was Plaintiff notified twice on February 6, 2010, that his call may be monitored or recorded, but he also admits a customer service agent informed him in May 2009 that TWC records all calls.  Merryman Decl., ¶¶ 2(i), (j), Ex. Q.  Plaintiff, on notice that TWC records customer service calls, cannot claim he had a reasonable

- 12 -

1   expectation of confidentiality when he contacted TWC.  *Elk Grove*, 2010 WL

2   4723720, at *2 (finding it was not reasonable for plaintiffs to have an expectation of

3   confidentiality for their calls to an answering service company because they knew

4   their conversations were being recorded).

5        Finally, even ignoring the evidence that he received notice that his call may

6   be monitored or recorded, Plaintiff still could not have had a reasonable expectation

7   of confidentiality for his call.  The circumstances surrounding Plaintiff's call –

8   which he made from his girlfriend's telephone number, to order a UFC fight on his

9   girlfriend's account, and while his girlfriend sat next to him – defeat any argument

10  of confidentiality.[5]  Merryman Decl., ¶ 2(n), Ex. Q.  Plaintiff could not have

11  expected that a conversation to order a UFC fight was the type of sensitive

12  information protected by section 632.  *Faulkner v. ADT Sec. Servs., Inc.*, 2011 WL

13  1812744, at *3-4 (N.D. Cal. May 12, 2011).

14       In *Faulkner*, plaintiff alleged a home security provider violated section 632

15  when it failed to initially notify him that his call to a call center to dispute a charge

16  was being recorded.  *Id.* at *3.  The court held that, due to the subject matter of the

17  call, plaintiff did not have a reasonable expectation of confidentiality giving rise to

18  a section 632 violation.  *Id.* at *4.  The court distinguished the nature of this call

19  from those that have been found to support an expectation of privacy such as calls

20  concerning "personal financial affairs."  *Id.* (citing *Kearney v. Salomon Smith

21  Barney, Inc.*, 39 Cal. 4th 95, 102 (2006) (personal financial affairs) and *Flanagan v.

22  Flanagan*, 27 Cal. 4th 766, 769-71 (2002) (private family matters)).  Here, Plaintiff

23  did not call to discuss personal financial affairs or a private family matter; rather, he

24  contacted TWC to order a UFC fight.  Merryman Decl., ¶ 2(n), Ex. Q.  Plaintiff's

25  call with TWC was not confidential as a matter of law.

26

27  _____

    [5] There is no evidence that Plaintiff ever terminated one of his ten to fifteen calls to

28  TWC after receiving notice that his call may be recorded.  Plaintiff cannot
    genuinely claim he reasonably expected this call to order a fight was confidential.

- 13 -

TWC'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

### B.   Plaintiff's Proposed Class Is Overbroad

Courts deny certification where the class definition is overbroad.  *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  Plaintiff's proposed class is overbroad on its face because it is not limited to persons whose calls were confidential, and it includes subscribers bound by TWC's arbitration provision.

### 1.   Plaintiff's Proposed Class Includes Individuals Who Had No Reasonable Expectation Of Confidentiality

Section 632 only prohibits recording a *confidential communication* without notice.  Plaintiff's proposed class, however, encompasses all California residents "whose telephone calls to or from TWC" were recorded without notice.  Motion at 2.  Because Plaintiff's class does not limit membership to individuals whose calls to or from TWC were confidential, it is overbroad and not certifiable on its face. In fact, most, if not all, callers to TWC's customer service centers do not have a reasonable expectation of confidentiality.  Over 95% of calls to TWC's call centers during the Class Period related to repairs, billing, sales, or retention.  Shimonovitz Decl., ¶¶ 5,6, Ex. J.  These calls do not give rise to a reasonable expectation of confidentiality as a matter of law.[6]  *Faulkner*, 2011 WL 1812744, at *4.

### 2.   Plaintiff's Proposed Class Includes Individuals Who Agreed To Arbitrate Their Claims

Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011).  As explained in section II.G, TWC's Subscriber Agreement includes an enforceable arbitration and class waiver provision from which a subscriber may opt out.  *Id.*, ¶ 7, Ex. G.  Since March 2010, all new subscribers, as well as any subscriber who signed a work order, have agreed to arbitrate and waive class claims.  Su Decl., ¶¶

---

[6] There is no evidence a single caller has terminated a call after hearing the pre-recorded notice.  This, alone, shows callers to TWC do not expect calls to be confidential.

TWC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

6-8, 13.  In addition, beginning in April 2010, TWC provided subscribers notice of the arbitration provision and their right to opt out.  *Id.*, ¶¶ 9-12, Exs. H, I; Thompson Decl., ¶¶ 3-6, Ex. B; Kraska Decl., ¶ 5, Ex. A.  Thus, all subscribers who did not opt out are bound by the arbitration and class waiver provision and may not be members of the proposed class.  *Concepcion*, 131 S.Ct. at 1751. Because Plaintiff's proposed class includes callers bound by their agreement to arbitrate and waive class claims, it is overbroad on its face and cannot be certified.

### C. Plaintiff Has Not Defined An Ascertainable Class

A class definition should be "precise, objective, and presently ascertainable" and "definite enough so that it is administratively feasible to determine whether a particular person is a class member."  *Mazur*, 257 F.R.D. at 567 (citing *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 367 (C.D. Cal. 1997)); *Deitz v. Comcast Corp.*, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007).  Here, to demonstrate an ascertainable class, Plaintiff must, but has not, set forth objective criteria for identifying the specific individuals who: (1) communicated with TWC during the Class Period; (2) had their call recorded; (3) did not receive notice their call may be monitored or recorded; and (4) had a reasonable expectation of confidentiality.

### 1. Plaintiff's Proposed "Objective Criteria" Demonstrate Why His Proposed Class Is Not Ascertainable

Plaintiff contends there are "objective criteria that may be used to ascertain membership in the Class" and proposes this Court ask the millions of people who spoke with TWC during the Class Period the following three questions:  (1) Did you speak on the telephone with a TWC representative during the relevant time period? (2) Were you notified that TWC might record your call? (3) Did TWC record your call?  Motion at 13.  Plaintiff claims that "[a]ffirmative answers to these three questions establish one's membership in the Class."  *Id.*  Of course, Plaintiff ignores the essential inquiries into whether the specific call at issue involved a confidential communication and whether the caller agreed to the arbitration

- 15 -

1   provision.  Plaintiff's admission that the Court must make these individual inquiries

2   of millions of callers concedes that the proposed class cannot be certified.  *Berndt v.*

3   *Cal. Dep't of Corrections*, 2010 WL 2035325, at *3 (N.D. Cal. May 19, 2010)

4   (class not ascertainable where determining class membership required individual

5   analyses based on the merits of each case); *Deitz*, 2007 WL 2015440, at *8.

6          Even if it were administratively feasible or proper to hold individual

7   evidentiary hearings for millions of people, Plaintiff does not explain how each

8   putative class member can be expected to know or remember the answers to the

9   above questions.  The first two inquiries — did you speak with a TWC agent during

10  the Class Period without receiving notice your call may be recorded — is not easily

11  answerable.  Customer service calls are routine and, typically, not memorable.

12  Plaintiff demonstrates this point, as he cannot recall when he made his calls to

13  TWC or whether he received notice that his calls may be recorded for all but two of

14  his 10 to 15 calls to TWC, or with respect to any of his calls to other companies'

15  call centers.  Merryman Decl., ¶¶ 2(d), (e), (s), Ex. Q.  Indeed, it is unlikely people

16  keep records of, or can accurately recall, whether and how many times they

17  contacted TWC, or received a call from TWC, during the Class Period, let alone

18  whether they received notice that the call(s) may be recorded.  Further, because

19  many calls are resolved in the IVR, callers may not even remember whether they

20  spoke to a live agent.  The putative class members would have the same problems

21  as Plaintiff identifying whether they called or received calls from TWC during the

22  Class Period, spoke to an agent, and received notice the call may be recorded

23         Plaintiff cannot legitimately claim that callers are supposed to recall the date

24  of a call and whether they heard a three-second pre-recorded message notifying

25  them their calls may be monitored or recorded during a call placed up to two years

26  ago.  In any event, reliance on fallible memories cannot establish class

27  membership.[7]  Given that these automated and common notices are brief, played

28  _____

[7] Courts routinely deny class certification when determining class membership

- 16 -

1  either at the initiation of the call or while the customer is on hold prior to being

2  connected to an agent, most, if not all, individuals will not be able to accurately

3  recall whether they heard such a notice during a particular call.

4       In fact, Plaintiff himself demonstrates both the inherent vagaries of relying

5  on memory and the need for extensive individualized inquiries in this case, because

6  the only reliable evidence shows that, contrary to his recollection, Plaintiff did

7  receive notice his call(s) on February 6, 2010, may be recorded.  Lowe Decl., ¶¶ 8-

8  15, Ex. C.  The Court cannot rely on subjective memories of phone calls placed

9  almost two years ago as the basis for determining class membership.

10       As to the third question Plaintiff proposes, there is no way for a caller to

11  know whether his or her communication with TWC was recorded.  Not every

12  telephone call to TWC is recorded because (1) Witness, TWC's recording system,

13  does not work 100% of the time and (2) TWC's vendors record only 10 % of calls.

14  As such, a person reading the class definition cannot assess whether he or she is a

15  member of the class.[8]  RJN, Ex. A (*Hopkins*, No. BC404133, at 9 (denying class

16  certification, in part, on the ground the class was not ascertainable because it was

17  defined in terms of liability (*i.e.*, the class issues could not be resolved until each

18  class member could demonstrate his or her call was recorded without notice)).

19       Plaintiff claims that, in addition to "self-identification" by class members,

20  "information can be obtained by common documents" and callers "can easily be

21  depends on memory.  *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liabl.*
*Litig.*, 214 F.R.D. 614, 617-20 (W.D. Wash. 2003) (declining to certify a class

22  consisting of purchasers of medication where the class definition required a plaintiff
to rely largely on "vagaries of memory" to establish membership); *In re Teflon*

23  *Prods. Liab. Litig.*, 254 F.R.D. 354, 363 (S.D. Iowa 2008), *petition for appeal
denied* (8th Cir. 2009) ((holding that "the fact the vast majority of plaintiffs must

24  rely on memory to establish crucial facts will prevent the parties and the Court from
ever being able to establish membership with objective certainty").

25

26  [8] Plaintiff has pointed to one incident, in almost two years, impacting 26 out of
7,000 VDNs in California, which may have resulted in some San Diego callers not

27  receiving notice their calls may be recorded.  Plaintiff has not identified a single
one of these callers, has set forth no criteria for potential class members to identify

28  whether they were impacted by this programming error, and has not offered any
method of identifying these callers on a classwide basis.  Herrera Decl, ¶ 15.

- 17 -

TWC'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

ascertained through TWC records."  Motion at 13.  Plaintiff's contention is not supported by the evidence.  Nor has he explained how such unidentified documents will allow the Court to identify members on a classwide basis.  Even ignoring that, Plaintiff's promise that class members can be identified at some time in the future, even if they are not now known, does not meet his evidentiary burden under Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, *he must be prepared to prove* that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.").[9]  The class must be ascertainable and class members identified *before* a class action may proceed.  *Deitz*, 2007 WL 2015440, at *8.  Plaintiff has not demonstrated a presently ascertainable class.

**2.      The Court Cannot Ascertain Who Had A Reasonable Expectation Of Confidentiality Without Asking Each Caller**

In order to determine class membership, this Court must undertake a caller by caller analysis to determine whether each putative class member had a reasonable expectation of confidentiality.  From the outset, any caller who received notice that the call may be recorded cannot have a reasonable expectation of confidentiality.  If the Court were somehow able to determine a specific caller did not receive such notice (and Plaintiff has not identified such a caller), the Court would then have to individually inquire of every caller to determine whether or not there was a reasonable expectation of confidentiality.

Determining whether or not a specific caller had a reasonable expectation of confidentiality with regard to a specific call requires an individual inquiry concerning the circumstances surrounding each call.  *Faulkner*, 2011 WL 1812744, at *3 (An objective analysis of reasonableness is based on the facts "and surrounding circumstances to determine whether the parties had an objectively

---

[9] To the extent Plaintiff proposes that class members can self-identify in the future, Rule 23 does not authorize opt-in class actions.  *Kera v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004).

- 18 -

reasonable expectation that the conversation is not being recorded or overheard."). "Since the standard is 'reasonableness' under §632(c), a factual determination is required to assess whether Plaintiff reasonably expected his communication would be overheard or recorded, and whether that expectation was reasonable under the circumstances." RJN, Ex. A (*Hopkins*, No. BC404133, at 17). Here, approximately 95% of calls to TWC during the Class Period concerned subjects about which a caller cannot as a matter of law have a reasonable expectation of confidentiality (billing, repairs, retention and sales). Shimonovitz Decl., ¶¶ 5,6, Ex. J. *See Faulkner*, 2011 WL 1812744, at *4.

### 3.   TWC Has No Way to Identify Plaintiff as a Caller

Plaintiff's situation shows the impossibility of accurately ascertaining class members. Plaintiff is not a TWC subscriber, and used his or his girlfriend's phone to contact TWC about her account. Merryman Decl., ¶¶ 2(a), (n), Ex. Q. Absent asking Plaintiff if he contacted TWC about his girlfriend's account on February 6, 2010, TWC would have no way to identify Plaintiff as the caller. Lowe Decl., ¶ 16.

There are undoubtedly numerous callers in Plaintiff's position. It is not feasible for the Court to ask each account holder which household member, or non-resident (as in Plaintiff's situation), made a call to TWC on a specific date and for what reason, and the account holder may not even know.[10] Plaintiff has not provided the Court any method to identify the specific persons who contacted TWC during the Class Period without individual inquiries.

### 4.   Plaintiff Offers No Way To Ascertain Proposed Class Members That Received Calls From TWC

Plaintiff's proposed class purports to include individuals who received calls from TWC that were recorded without notice. Plaintiff, however, does not even

---

[10]   It is also not feasible for the Court to determine on a classwide basis who made calls from phone numbers associated with business accounts, where numerous employees have access to the same numbers. Nor would the Court have a way to identify people who changed or canceled their numbers during the Class Period.

- 19 -

attempt to argue that class membership of these individuals can be established with common evidence.  Indeed, Plaintiff and his expert admit the only way to determine who received a call from TWC and did not receive notice the call was being recorded is to review the outgoing call recordings one by one.[11]

### D.   Plaintiff Has Not Met His Burden Of Proof Under Rule 23(a)

District courts must "engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23."  *Ellis*, 657 F.3d at 980.  Plaintiff has not met this burden.

### 1.   Plaintiff Has Not Presented Evidence Of Numerosity

A bare allegation of numerosity is insufficient to meet Rule 23's prerequisite.  *O'Connor*, 180 F.R.D. at 367.  Plaintiff argues he has established numerosity because TWC receives "millions of calls" and Plaintiff's expert opines that "tens of thousands of callers" received no notice of recording.  As an initial matter, Mr. Prunty's unsupported opinion is not admissible.  Regardless, reliance on one expert's unsupported opinion, without providing further evidence, is insufficient to satisfy Plaintiff's burden.  *See Dukes*, 131 S.Ct. at 2553-56; *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) (mere speculation that numerous class members exist is insufficient to satisfy the numerosity requirement).

Importantly, Plaintiff has presented no evidence of the total number of individuals during the Class Period that (1) did not receive notice their call was being recorded, (2) actually had their call recorded, and (3) had a reasonable expectation of confidentiality regarding their specific call.  To the extent any caller meets all three criteria, Plaintiff provides no evidence as to the number of these

---

[11] Plaintiff's expert testified that there may be voice recognition technology that could hypothetically review outgoing calls to determine whether they contained the word "record."  There is no evidence this technology would work in TWC's case. In any event, a California court recently rejected this exact argument.  Request for Judicial Notice ("RJN"), Ex. A (*Hopkins v. Healthmarkets, Inc.*, No. BC404133 (Cal. Nov. 11, 2011) (order denying class certification)).

TWC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

putative class members that are prohibited from participating in this class because of TWC's binding arbitration and class waiver agreement.

## 2.   Plaintiff's Claims Are Not Typical

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 567 F.3d at 984 (internal citations omitted).  Plaintiff's claims are not typical because, as he did not have a call with TWC recorded without notice, he is not a member of the class he seeks to represent. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019-20 (9th Cir. 2011).

Unique affirmative defenses to Plaintiff's claim also prohibit a finding of typicality. *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997).  Plaintiff himself presents a unique fact pattern subject to unique defenses, such as lack of standing, lack of evidence his call was recorded or he did not receive notice his call was recorded, and lack of a reasonable expectation of confidentiality.  These defenses will play a major role in the litigation.

Finally, Plaintiff's claims are not typical of putative class members who received a call from TWC and were recorded without notice because he did not receive a call from TWC that was recorded.  Merryman Decl., ¶ 2(r), Ex. Q.

## 3.   Plaintiff Has Not Satisfied The Commonality Requirement

To satisfy Rule 23(a)(2), Plaintiff must demonstrate the proof offered in support of his individual claims will also prove the claims asserted on behalf of the alleged class members who have called or received calls from TWC. *Dukes*, 131 S.Ct. at 2551 ("What matters to class certification is not the raising of common 'questions' . . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal citation omitted)); *Ellis*, 657 F.3d at 981.  To determine whether there are common questions of law and fact, this Court must look at the "substantive issues of the

- 21 -

TWC'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1   underlying claim and the proof relevant to each issue." *Williams v. Veolia Transp.*

2   *Servs., Inc.*, 2010 WL 1936270, at *1 (9th Cir. May 14, 2010).

3        Plaintiff claims that "the most obvious and overriding common question of

4   fact is whether TWC notified its callers whether their calls were being recorded,"

5   and the "question of law common to the Class is whether TWC violated" section

6   632.  Motion at 15.  Nowhere in Plaintiff's motion, however, does he explain how

7   either of these questions can be *answered* with common evidence.  Indeed, Plaintiff

8   has proposed no method to identify all individuals who allegedly did not receive

9   notice that their calls may be recorded, aside from asking each one individually.

10        Moreover, as discussed above, whether TWC violated section 632 with

11   regard to a specific call requires multiple individual inquiries.  Even in Plaintiff's

12   ideal pretend world where unlimited information exists about each call made to

13   TWC (for which he offers no evidence), Plaintiff has provided no method to review

14   this information on a classwide basis, let alone how he can establish the *actual*

15   person who contacted TWC and determine whether the caller had a reasonable

16   expectation of confidentiality.  Lowe Decl., ¶ 16.

17        **4.**    **Plaintiff Is Not An Adequate Class Representative**

18        The party seeking class certification has the burden of proving the adequacy

19   of its representation.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407

20   (C.D. Cal. 2005).  As an initial matter, to represent adequately the interests of the

21   class, Plaintiff's claims must be consistent with the claims of putative class

22   members.  *Dukes*, 131 S.Ct. at 2550; *Fine v. Conagra Foods, Inc.*, 2010 WL

23   3632469, at *4 (C.D. Cal. Aug. 26, 2010).  Here, Plaintiff is not even a member of

24   the proposed class.

25        In addition, proposed class representatives cannot adequately protect the

26   interests of the class if they are unable or unwilling to provide adequate funds to

27   maintain a class action.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974)

28   (dismissing action where representative would not bear cost of notice to class as

TWC'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

"part of the ordinary burden of financing" a class action);  *Roth v. Dep't of Veterans Affairs*, 110 Cal. App. 3d 622, 631-32 (1980) (named plaintiff can proceed with an individual action where he does not wish to advance expenses of class notice); *Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 665 (D. Ore. 1991) ("If the representative client is not financially responsible, the attorneys have free rein over the prosecution of the action.  This is tantamount to the unacceptable situation of the attorney being a member of the class of litigants while serving as class counsel.").  Here, Plaintiff is unemployed and says he will not be responsible for even a single dollar of costs.  Merryman Decl., ¶¶ 2(b), (h), Ex. Q.  As such, he cannot adequately represent the interests of the class.

Finally, Plaintiff is not an adequate class representative because he cannot demonstrate he "possess[es] a sufficient level of knowledge and understanding to be capable of 'controlling' . . . the litigation."  *Berger v. Compaq Comp. Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001).  A representative must be in a position to "check the otherwise unfettered discretion of counsel in prosecuting the suit," not only with respect to the facts of the case but also with respect to the economic consequences of the suit.  *Rolex,* 136 F.R.D. at 666 .  Plaintiff has made no effort to meaningfully participate in this litigation.  Merryman Decl., ¶ 2(c), Ex. Q.  He does not know who the correct parties are, what documents have been filed, what documents have been produced, what relief he seeks, and who comprises the proposed class.  *Id.*  He defers to his lawyers for litigation decisions, exhibiting a "blinding reliance" on counsel.  *Stuart v. Radioshack Corp.*, 2009 WL 281941, at *10 (N.D. Cal. Feb. 5, 2009); Merryman Decl., ¶ 2(c), Ex. Q.  Plaintiff has no desire to control this action on behalf of the putative class.

### E.   Plaintiff Has Not Met His Burden Of Proof Under Rule 23(b)

Plaintiff has the burden to demonstrate "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and

- 23 -

TWC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff ignores his burden and does not address each requirement for Rule 23(b); rather, he discusses only the superiority requirement. Class certification should be denied.

### 1. Individual Fact Issues Preclude Certification

Whether each putative class member had a telephone call with TWC, the substance of that call, the circumstances surrounding that call, whether the caller received notice, and whether the call was recorded, are all individual issues and are not appropriate for class treatment. Such individualized inquiries overwhelm any possible common issue and require denial of certification.

### 2. A Class Action Is Not Superior

Rule 23(b)(3) requires Plaintiff to demonstrate a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts bear a significant responsibility to insure that the great power wielded by plaintiffs (or more accurately their counsel) carrying the cudgel of a class action is used only in appropriate cases." *Legge v. Nextel Commc'ns., Inc.*, 2004 WL 5235587, at *13 (C.D. Cal. June 25, 2004).

#### (a) A Class Action Is Unmanageable

The existence of individualized questions may preclude certification under a superiority analysis: "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser*, 253 F.3d at 1189. Here, the many individualized inquiries necessary to establish each putative class member's right to recover damages and to resolve this dispute render a class action inappropriate, inefficient and unmanageable. *Seig v. Yard House Rancho Cucamonga, LLC*, 2007 WL 6894503, at *4 (C.D. Cal. Dec. 10, 2007).

#### (b) Putative Plaintiffs May Recover in Small Claims Court

Statutory damages recoverable under section 632 provide a sufficient incentive to file in small claims court, so a class action is not the superior method of

- 24 -

handling this dispute.  *Seig*, 2007 WL 6894503, at * 6 (class action was not superior where individual plaintiffs may file in small claims court).  Statutory damages are up to $5,000 for each violation of section 632.  Cal. Pen. Code § 637.2.  A California resident can recover up to $7,500 in small claims court each year, and TWC's arbitration provision permits subscribers to bring such claims.

(c)   <u>A Class Action Does Not Serve the Objective of Deterrence</u>

Deterrence is one of the public policy objectives of class actions.  *Seig*, 2007 WL 6894503, at * 6 (citing *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 546 (N.D. Cal. 2005)).  TWC has in place a system that ensures compliance with section 632.  Despite reviewing thousands of "trouble tickets" and "change requests" regarding TWC's call center technology, Plaintiff found only 26 out of 7,000 VDNs that were programmed incorrectly for three days due to human error.  Herrera Decl., ¶¶ 5-14.  TWC fixed the issue immediately upon discovering it.  *Id*.

## IV.   CONCLUSION

For the foregoing reasons, TWC respectfully requests this Court deny Plaintiff's motion for class certification.

Dated:  December 12, 2011          WHITE & CASE LLP

                                   By:  */s/Bryan A. Merryman*
                                        Bryan A. Merryman

                                   Attorneys for Defendant
                                   TIME WARNER CABLE LLC

- 25 -