BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
RACHEL J. FELDMAN (SBN 246394)
rfeldman@whitecase.com
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone:  (213) 620-7700
Facsimile:   (213) 452-2329

Attorneys for Defendant
TIME WARNER CABLE LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CALZADA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TIME WARNER CABLE LLC, a Delaware Corporation,<br><br>　　　　　Defendant. | No.  CV 11-01701-DMG(JCGx)<br><br>DECLARATION OF BRYAN A. MERRYMAN IN SUPPORT OF DEFENDANT TIME WARNER CABLE LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>Date:　　January 6, 2012<br>Time:　　2:00 p.m.<br>Crtrm:　　7 (Hon. Dolly M. Gee) |

## DECLARATION OF BRYAN A. MERRYMAN

1. I am an attorney admitted to practice before all courts of the state of California. I am a partner of the law firm of White & Case LLP, attorneys of record in this action for defendant Time Warner Cable LLC ("TWC"). I have personal knowledge of the facts stated herein, and, if sworn as a witness, could and would testify competently thereto.

2. On November 15, 2011, I attended the deposition of plaintiff Miguel Calzada. Attached as **Exhibit Q** to the Appendix of Exhibits is a true and correct copy of pages 8-10, 12, 17-18, 26-28, 31, 36-43, 45-47, 52-61, 65-66, 69-70, 75-79, 81-82, 85-100, 103-106, 110-114, and 117-119 of the transcript of Mr. Calzada's deposition. The attached pages from the transcript accurately reflect the questions asked and the answers given at Mr. Calzada's deposition. At his deposition, Mr. Calzada testified:

(a) Mr. Calzada is not currently a TWC subscriber (8:10-9:3);

(b) Mr. Calzada is currently unemployed (9:16-10:4, 12:6-7);

(c) Mr. Calzada knows little to nothing about this case, including the proposed class, the actual plaintiffs, or discovery, and relies entirely on his counsel to determine litigation strategy (17:5-18:15, 36:25-41:2, 41:11-42:9, 43:2-4, 45:6-14, 52:5-53:22, 110:16-114:1, 117:18-119:5);

(d) Mr. Calzada has spoken with a TWC employee ten to fifteen times, but cannot recall the exact number of times nor specific dates, other than two of those calls and his initial call to order TWC's service (26:2-25, 94:9-12, 96:21-25);

(e) Mr. Calzada called TWC in 2002 or 2003 to order cable service, on May 27, 2009, and on February 6, 2010 (27:1-28:3, 55:1-56:8);

(f) Mr. Calzada does not know his obligations as a class representative other than to protect the interests of the class, including appear for his

|   |   |   |
|---|---|---|
| 1 |     | deposition, answer all questions truthfully, and not make any deals |
| 2 |     | with any attorney to benefit himself (45:15-46:17); |
| 3 | (g) | Mr. Calzada does not know of another person, except allegedly his brother, who contacted TWC and did not receive notice the call may be monitored or recorded (47:3-10); |
| 6 | (h) | Mr. Calzada is not prepared to pay any costs for the litigation (53:23-54:25); |
| 8 | (i) | At times, Mr. Calzada does not recall whether he was told on May 27, 2009, that his call was being recorded, but, at other times, Mr. Calzada admits that a customer service representative told him all calls, including his and his brother's prior call, are recorded, and he does not know whether his call was actually recorded on May 27, 2009 (55:21-59:11, 65:10-20, 77:18-79:4); |
| 14 | (j) | Mr. Calzada admits that on May 27, 2009, he was told that TWC records all calls and that the call between his brother and TWC was recorded (57:3-61:25); |
| 17 | (k) | Mr. Calzada called TWC on May 27, 2009, from his brother's phone number to discuss a billing issue regarding his brother's account (65:21-66:12, 69:19-70:6); |
| 20 | (l) | Mr. Calzada does not recall whether he heard advertisements, but is certain he did not receive a pre-recorded notice informing him the call on May 27, 2009, may be monitored or recorded (75:10-76:12); |
| 23 | (m) | Mr. Calzada does not recall whether he was concerned about his call being recorded on May 27, 2009, and recalls he was not concerned about his call being recorded on February 6, 2010 (78:22-79:4, 89:5-11); |
| 27 | (n) | Mr. Calzada called TWC on February 6, 2010, to order a pay per view event (a UFC fight) on his girlfriend's account from either his or his |

2

girlfriend's cell phone while she sat next to him, and he recalls he did not receive notice his call may be monitored or recorded (81:1-82:13, 87:4-88:6, 105:14-106:25);

(o) Mr. Calzada recalls hearing advertisements while he was on hold on February 6, 2010, but does not recall their content (85:22-86:25);

(p) Mr. Calzada does not know whether his call to TWC on February 6, 2010, was actually recorded (88:8-24);

(q) Mr. Calzada does not recall much of the specific content of his conversation with TWC's customer service agent on February 6, 2010 (90:20-93:4);

(r) Mr. Calzada received a call from a technician during the installation of TWC cable boxes at 15128 Sylvan Street, Van Nuys, CA 91411, and does not recall whether he received a call from a technician during the installation of TWC cable boxes at 4567 Willis Avenue, Apartment 211, Sherman Oaks, CA 91403 (94:20-96:15);

(s) Mr. Calzada does not recall whether he has received notice that his calls may be recorded with respect to any specific call to other companies' call centers, but he hears these automated messages frequently (97:1-100:17); and

(t) Mr. Calzada does not know whether he considered his conversations with TWC on May 27, 2009, and February 6, 2010, confidential (103:13-106:3).

3. On December 5, 2011, I attended the deposition of Martin Prunty. Attached to the Appendix of Exhibits as **Exhibit R** is a true and correct copy of pages 55-58, 107-108, 120-121, 129-131, 146, 148-149, 154-155, 158, 174-176, 178-179, and 186-187 of the transcript of Mr. Prunty's deposition. The attached pages from the transcript accurately reflect the questions asked and answers given at Mr. Prunty's deposition. At his deposition, Mr. Prunty testified:

3

1  (a)  Mr. Prunty is not familiar or experienced with the brand of interactive voice response ("IVR") technology TWC uses, known as "West Interactive IVR" (55:20-56:6);

(b)  Mr. Prunty is not familiar or experienced with the brand of call recording technology TWC uses, known as "Witness" (57:25-58:11);

(c)  Mr. Prunty has no evidence to support his statement that it is "likely" TWC's vector directory numbers ("VDNs") were never programmed to provide recording notifications (107:20-108:14);

(d)  Excerpts from the document with the production number TWC01977 do not "clearly substantiate" TWC failed to provide notice that it may monitor or record a call to every person who called TWC from the state of California, and he has no other evidence to support this assertion (120:3-121:21);

(e)  Mr. Prunty did not review document number TWC01977 in its entirety (129:3-14);

(f)  Exhibit B to his declaration has been excerpted and contains only portions of document number TWC01977 (130:12-131:13);

(g)  Mr. Prunty has not contacted anyone at TWC to help interpret TWC's documents, such as TWC01977, and he does not have independent knowledge of the content of TWC01977 (131:14-24);

(h)  Based on his reading of TWC01977 and the issues identified in that document (CR 766 and CR 771), he does not know how many callers may have been impacted (146:11-19);

(i)  Mr. Prunty does not know for certain the significance of the date that appears on TWC01977, which refers to the issues identified in the document (*i.e.*, CR 766 and CR 771); rather, he knows only what the date might refer to generally, but does not know what it specifically references for purposes of TWC's practices (148:11-149:12);

4

1  (j)  Mr. Prunty is speculating that it is "very likely" the alleged problems
2       with TWC's notification system went on for longer than thirteen days
3       (154:9-155:11);
4  (k)  Mr. Prunty has not found, nor does he have any knowledge of, a
5       specific toll-free or local number used by TWC that does not give
6       callers notice their calls may be monitored or recorded (158:15-23);
7  (l)  Mr. Prunty has never used Verint ContactStore for Communications
8       Manager ("Verint") or its bulksearch capabilities, nor does he have
9       personal knowledge of whether it is capable of searching by VDN, and
10      his knowledge of Verint's capabilities is limited solely to reviewing
11      Verint's administrative guide (174:19-175:23);
12 (m)  Mr. Prunty has no evidence to support his contentions regarding
13      TWC's outgoing call recording policies or practices, aside from an
14      "internal TWC e-mail" that he has trouble remembering (175:24-
15      176:16);
16 (n)  Mr. Prunty does not know TWC's policies for storing or recording
17      outgoing calls, whether or not recorded outgoing calls are stored
18      individually, what file format TWC uses to store recorded outgoing
19      calls, or the technology TWC uses to store recorded outgoing calls
20      (178:12-179:11);
21 (o)  Mr. Prunty's contention that there is a "significant gap" between
22      TWC's recording notification policies and its actual practices is based
23      on solely TWC01977 and the deposition of Sagi Shimonovitz.  He
24      admits he did not even search all of TWC01977 when concluding
25      TWC was not providing notice to its callers that their calls may be
26      monitored or recorded (186:1-21); and
27 (p)  Mr. Prunty has not seen any specific evidence that shows TWC was
28      not giving notice that outbound calls may be monitored or recorded

5

(187:8-11).

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Executed on December 12, 2011, at Los Angeles, California.

          */s/ Bryan A. Merryman*
            Bryan A. Merryman